**ORAL ARGUMENT SCHEDULED FOR NOVEMBER 15, 2010**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

10-7036

---

**DICK ANTHONY HELLER, ABSALOM JORDAN,
WILLIAM CARTER, and MARK SNYDER**

Appellants

v.

**THE DISTRICT OF COLUMBIA and
ADRIAN M. FENTY, Mayor, District of Columbia**,

Appellees

---

**APPELLANTS' REPLY TO APPELLEES'
OPPOSITION TO MOTION TO STRIKE**

---

Appeal from the U.S. District Court
for the District of Columbia
District Ct. Civil No. 1:08-cv-01289 (RMU)


Stephen P. Halbrook
Richard E. Gardiner
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

## INTRODUCTION

Appellants have moved to strike a portion of Appellees' Brief which, to support summary judgment, relies on unsworn factual testimony in a website video that was not mentioned in the District Court, is not part of the record on appeal, and has not been filed with this Court. Appellants have also moved to strike pages 161-223 from Appellees' Statutory Addendum ("SA"). These pages consist primarily of unsworn written testimony and a Committee Report summarizing that testimony, which Appellees cite *as evidence* at least 46 times in their Brief to support summary judgment. These documents were not filed in the district court in accordance with Fed. R. Civ. P. 56 and LcvR 7(h), and also are not part of the record on appeal.

Appellees assert principally that "legislative history" may be judicially noticed on appeal and is subject to a hearsay exception. That contention is mistaken, because the testimony and documents are cited not to show what a legislature intended, or what its purpose was, but rather to establish the truth of facts relevant to applying the legal tests established by *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). Appellees also contend that Appellants consented to the inclusion of these materials by their lack of opposition to Appellees' Consent Motion for Leave to File Statutory Addendum including Legislative History filed on August 3, 2010 ("Motion for Leave"). That is patently incorrect with regard to the video, and is misleading with

1

regard to the materials in the Statutory Addendum. Their contention that the Motion to Strike was filed too late is also meritless.

**ARGUMENT**

I. THE PAGES OF APPELLEES' BRIEF REFERRING TO VIDEO TESTIMONY ON A WEBSITE SHOULD BE STRICKEN

The District asserts that it is proper for this court to rely on unsworn video testimony on a website, never previously mentioned in this litigation, to support the grant of summary judgment by the district court below. It alleges that "there is no dispute regarding authenticity"[1] and that "This court can take judicial notice of the hearing video whether or not the district court did, for '[j]udicial notice may be taken at any stage of the proceeding." DC Br. at 9 (citations omitted).

The major flaw in the District's argument is that it has relied on the video not as "legislative history" as that term is ordinarily used, but as an attempted substitute for its failure to offer evidence on summary judgment. Legislative history is employed by the courts to resolve an ambiguity in a statute, to shed light on the statute's meaning or purpose, or to determine legislative intent. *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) (court may look to legislative history where statutory language "is subject to more than one

---

[1] Because Appellees have never presented a copy of this video to the district court or this court, there has been no attempt to authenticate it.

interpretation and the meaning of Congress is not apparent"); *Bonham v. District of Columbia Library Admin.*, 989 F.2d 1242, 1244 (D.C. Cir. 1993) (legislative history may be used "in determining the legislative purpose of a law"); *South Carolina Public Service Authority v. FERC*, 850 F.2d 788, 794-95 (D.C. Cir. 1988) (legislative history examined to determine what "Congress intended"). But here, the District has sought to use the video not for these or similar purposes, but as proof of the truth of facts necessary for the courts to apply the constitutional tests under *Heller*.

*Heller* held that firearms that are "in common use" and are "typically possessed" by law-abiding citizens for "lawful purposes" such as self-defense are protected by the Second Amendment. *District of Columbia v. Heller,* 128 S. Ct. 2783, 2815-16 (2008). Certain rights may also be affected by whether they involve the "carrying of 'dangerous and unusual weapons.'" *Id.* at 2817. Thus, determination of whether weapons are in common use by law abiding citizens for lawful purposes, rather than dangerous and unusual, are tests under the Second Amendment to be decided by the court based on the evidence. The District claims, in fact, that its bans on "assault weapons" and magazines of more than ten rounds "do not implicate the Second Amendment" and that "assault weapons" "fall outside the definition of protected 'arms' under *Heller*." DC Br. at 27. These are questions of constitutional law to be decided by the courts, not by the D.C. Council.

Having failed to introduce any evidence in the district court (*see* Motion to Strike at 2-4), the District seeks to supplement the factual record under the guise of submitting "legislative history." The District cites the video for factual propositions relevant under *Heller* such as: "assault weapons are a tiny percentage of firearms available in the country" (DC Br. 29) (common use test); that they are "not useful for legitimate self-defense" (DC Br. 30) (lawful purposes); that they are allegedly used disproportionately in crime (DC Br. 31) (typically possessed by law abiding citizens for lawful purposes); that magazines over ten rounds increase "the firepower of mass shooters" but that they are not of value for self-defense (DC Br. 31) (lawful purposes); and that they allegedly constitute only stated percentages of the civilian gun stock (DC Br. 30, 31) (common use). *See also* Motion to Strike at 15-16.

The video testimony is thus plainly hearsay, because it consists of out of court declarations offered to prove the truth of the matters asserted. Fed. R. Evid. 801(c). Though the District has offered a proposed hearsay exception for the Committee Report itself (*see* discussion in Part II, below) it has not even suggested a hearsay exception that would apply to the video. Courts cannot judicially notice hearsay for the truth of the matters asserted. The Second Circuit, for example, approved a lower court holding that:

> courts could not consider as conclusively proven facts merely recited in CAB orders and opinions and in airline reports that are the product of no

> adversary proceedings, distinguishing between the *existence* of such documents, of which courts might in an appropriate case take judicial notice, and the *truthfulness of their contents*, which would be subject to contrary proof had the trial precluded by Toolco's default actually been conducted. (emphasis added)

*Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 67 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973). When judicial notice is taken of a fact, it is deemed conclusively to be true. Hours of testimony during a public hearing by unsworn witnesses from advocacy groups cannot be converted into incontestable facts by purporting to take judicial notice of that testimony on appeal.

Appellees did not consent to the inclusion of this testimony. The District stated in its Motion for Leave that "The district court relied on legislative history relating to those statutes in its opinion (Record Document 32), and the District also intends to do so in its brief." Motion for Leave at 1. Thus, it would be "convenient for the court" to have that legislative history included in the Statutory Addendum.

However, the district court did not rely on the three and a half hours of oral testimony in the video which now forms a principal basis for the District's factual assertions in pages 29-32 of its Brief. Instead, the district court cited only to the Committee Report itself. The video was never even mentioned in the district court. More importantly, the video was not, in fact, included in the District's SA pursuant to their Motion for Leave, and remains outside the record in this case.

5

Furthermore, a video of testimony on a website does not constitute "legislative history" in any accepted meaning of that term. Unlike usual sources of legislative history, this video is not published and is not available in law libraries. Appellees, and presumably this Court, would not have been aware of its existence without the web citation that the District furnished in its Brief. Indeed, after briefing has been completed in this case, the District has now revealed the existence of a video containing testimony from the first public hearing, conducted on September 18, 2008. Opp. Mtn. Strike at 9. Nineteen witnesses appeared at this hearing, the majority of whom advocated less restrictive gun laws. SA 171-73. Is this testimony judicially noticeable, also, to evaluate the summary judgment entered by the district court? These evanescent website videos could disappear at the whim of the District tomorrow, and are not proper materials for judicial notice as legislative history.

This website video is not "legislative history," its inclusion was not consented to by Appellants, it is not part of the appellate record, and it is hearsay for the purpose for which it is offered. The pages in Appellees' Brief relying on it should be stricken.

II. THE COMMITTEE REPORT AND ATTACHED TESTIMONY SHOULD BE STRICKEN FROM THE STATUTORY ADDENDUM

As noted, the District represented in its Motion for Leave that it would be "convenient for the court" to include the "legislative history" relied on by the district

court, and on which it also intended to rely. However, when it filed its Brief and the SA a month later, the District stretched that principle beyond recognition.

With only one exception (JA 170-171), the district court cited solely to the Committee Report, not directly to the voluminous testimonial attachments. (JA 152, 167, 169-76). Yet the District in its Brief has cited freely to the testimonial attachments, including unsworn testimony, that it included in the SA. *See*, *e.g.,* DC Br. 8, 29, 30, 31, 32. Those citations are in addition to its cites to the website video.

Once again, the citations by the District to this testimony and to the Committee Report itself are attempts to establish propositions of fact as a substitute for its lack of summary judgment evidence. When the District filed its Motion for Leave to include "legislative history" in the SA, Appellants could not know that the District intended to include in its Brief, by Appellants' count, at least 46 citations to the Committee Report and its attachments, as well as 12 citations to the website video, nearly all for the purpose of establishing "facts" in support of summary judgment.[2]

---

[2] The District's contention that Appellant's Motion to Strike was filed too late is without merit. Appellants had no way of knowing that the District would try to use "legislative history" in this manner until after the District filed its Brief and the SA on September 3, 2010. All that remained to be filed thereafter was Appellants' Reply Brief, and the Motion to Strike was filed prior to Appellants' Reply. There was no significant delay, and no prejudice at all to Appellees.

The District contends that the Committee Report is offered not for the truth of the assertions therein "but to show that the legislature had a substantial basis for the factual conclusions it reached." Opp. Mtn. Strike at 20. However, elsewhere in its Opposition the District admits that it is offering the Committee Report to establish facts, arguing that the Report's "findings not only may be judicially noticed, but also are 'evidence of the facts asserted.'" Opp. Mtn. Strike at 13 (citing *Stasiukevich v. Nicolls*, 168 F.2d 474, 479 (1st Cir. 1948)); *see also* D.C. Br. at 32 (same).

Since the Committee Report is offered as "evidence of the facts asserted," it is clearly hearsay. The District's argument that the exception for public records in Fed. R. Evid. 803(8) should apply is misplaced. The relevant subsection (Rule 803(8)(C)) allows an exception for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." However, the Committee Report is not the type of objective investigative report contemplated by Rule 803(8)(C). In *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986), a party sought to introduce into evidence a Congressional subcommittee investigative report regarding Firestone tires. The report was admittedly hearsay, and the court held that Rule 803(8)(C) did not apply. That Rule, the court stated, permits:

> [t]he introduction into evidence of the factual findings of an objective government investigation. The subcommittee report did not contain the

factual findings necessary to an objective investigation, but consisted of the rather heated conclusions of a politically motivated hearing.[3]

Moreover, the case on which the District chiefly relies to establish that the Committee Report's "findings not only may be judicially noticed, but also are 'evidence of the facts asserted'" does not, in fact, so hold. *Stasiukevich v. Nicolls*, 168 F.2d 474, 479 (1st Cir. 1948).[4] First, in this 1948 case two investigative reports, one state and one federal, were in fact *admitted* into evidence in the district court at trial. *Id.* at 476, 479-80. Judicial notice was not taken of them. Second, these reports were not "legislative history" committee reports relating to a particular bill, but were factual reports of special investigative committees regarding subversive activities. *Id.* at 479-80. Third, the court noted that, once properly in evidence, the "other party may introduce evidence tending to prove the contrary of the facts asserted in the official report." *Id.* at 479. Here the Committee Report was never put into evidence.

---

[3] The Committee Report relies extensively on the testimony at the October 1 hearing by advocacy group witnesses supporting the measure, while merely noting that witnesses opposing restrictions on firearms ownership and use spoke at the September 18 hearing, without any detailed summary of their statements. In addition, the factual assertions in the Committee Report were largely controverted by sworn declarations filed by Plaintiffs in the district court.

[4] The same is true of the other case the District cites, *Alaska v. American Can. Co.*, 358 U.S. 224 (1959), in which the Court, to determine the legislature's intent, merely took judicial notice of the language of a bill as introduced, and that a provision was deleted by a committee before the bill passed the House. *Id.* at 226-27.

The District repeatedly refers to "legislative findings" entitled to "deference," but the Committee Report itself does not represent official findings of the legislature as a whole. The case of *Gonzales v. Carhart*, 550 U.S. 124 (2007) provides an illustrative counterpoint. In that case, the United States Congress had made specific congressional findings of fact, numbered by paragraph and subparagraph, as part of the bill itself. *Id.* at 157-58, 160, 165-66. Even these findings by the whole Congress did not receive deference from the Supreme Court, when testimony at trial showed them to be factually incorrect. *Id.* at 165 (courts retain "an independent constitutional duty to review factual findings where constitutional rights are at stake").

But the D.C. Council made no such findings. Although the District asserts that the Council "approved the committee's bill based on the Committee Report," the web page cited states only "Report Filed 11/25/08" and shows the date of passage. Opp. Mtn. Strike at 2. There was no formal adoption of the Report by the whole Council.[5] Thus, it is problematic whether the Committee Report even constitutes legislative findings sufficient to raise a factual issue, had it been entered into evidence.

For these reasons, the Report with attachments should be stricken from the SA.

---

[5]The engrossed version of the bill on the website, indeed, adopted a small part of the Committee Report ("The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by [the Home Rule Act]....") but that language was changed in the enrolled bill.

Respectfully submitted,

Dick Anthony Heller
Absalom F. Jordan, Jr.
William Carter
Mark Snyder

By counsel

/s/Stephen P. Halbrook
Stephen P. Halbrook
D.C. Bar No. 379799
protell@aol.com

/s/Richard E. Gardiner
Richard E. Gardiner
D.C. Bar No. 386915
regardiner@cox.net

Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2010, electronic copies of Appellants' Reply to Appellees' Opposition to Motion to Strike were served through the Court's CM/ECF system and paper copies were mailed by first-class mail, postage prepaid, to:

| | |
|---|---|
| Todd S. Kim<br>Solicitor General<br>Office of the Attorney General<br>441 4th Street, NW, Suite 600S<br>Washington, D.C. 20001 | Matthew Shors<br>O'Melveny & Meyers LLP<br>1625 Eye Street, NW<br>Washington, D.C. 20006-4001 |
| William J. Olson<br>370 Maple Avenue West<br>Suite 4<br>Vienna, VA 22180-5615 | Paul R.Q. Wolfson<br>Wilmer Culter Pickering Hale and Dorr LLP<br>1875 Pennsylvania Ave., NW<br>Washington, DC 20006 |

/s/ Richard E. Gardiner
RICHARD E. GARDINER