**ORAL ARGUMENT HELD ON NOVEMBER 15, 2010**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

10-7036

_____

**DICK ANTHONY HELLER, ABSALOM JORDAN,
WILLIAM CARTER, and MARK SNYDER**

Appellants

v.

**THE DISTRICT OF COLUMBIA and
ADRIAN M. FENTY, Mayor, District of Columbia**,

Appellees

_____

**SUPPLEMENTAL BRIEF FOR APPELLANTS**

_____

Appeal from the U.S. District Court
for the District of Columbia
District Ct. Civil No. 1:08-cv-01289 (RMU)

Stephen P. Halbrook
Richard E. Gardiner
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      (1) After the Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973)
(codified at D.C. Code §§ 1-201.01–1-207.71 (2001)), do gun laws passed
by the District of Columbia Council have to be "usual and reasonable" within
the meaning of the federal Act of June 30, 1906, Pub. L. No. 59-401,
which is currently codified at D.C. Code § 1-303.43? . . . . . . . . . . . . . . . . . . . . . 3

      (2) What does the term "usual" mean in this statute? Is the
canon of constitutional avoidance relevant to that question? . . . . . . . . . . . . . . . . 8

      Is the canon of constitutional avoidance relevant to the
question of the meaning of the term "usual" in this statute? . . . . . . . . . . . . . . . . 12

      (3) Are the challenged D.C. laws "usual" within the meaning
of this statute? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          *Registration* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          *"Assault weapons"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          *Ammunition Feeding Devices* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      (4) Does the D.C. Court of Appeals' interpretation of the
congressionally enacted Act of June 30, 1906, or of similarly worded
federal statutes, receive deference from the federal courts? If so,
under what circumstances? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

# TABLE OF AUTHORITIES[*]

**CASES**                                                   **<u>Page</u>**

*Atkins v. Virginia*, 536 U.S. 304 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bliley v. Kelly,* 23 F.3d 507 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Christensen v. Harris County*, 529 U.S. 576 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*, 919 F.2d 148 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

*Crane v. District of Columbia*, 289 F. 557 (D.C. App. 1923) . . . . . . . . . . . . . . . 11

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008) . . . . . . . . . . . . . . . . . . . . . 14

*District of Columbia v. John R. Thompson Co.*, 346 U.S. 100 (1953) . . . . . . . . . 11

*Dwyer v. Farrell,* 193 Conn. 7, 475 A.2d 257 (1984) . . . . . . . . . . . . . . . . . . . . . 15

*Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Filippo v. Real Estate Comm'n of the District of Columbia*, 223 A.2d 268 (D.C. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fulton v. District of Columbia,* 2 App. D.C. 431 (D.C. Cir. 1894) . . . . . . . . . 7, 12

*Glover v. District of Columbia,* 250 A.2d 556 (D.C. 1969) . . . . . . . . . . . . . . . . 10

*Green v. District of Columbia*, 710 F.2d 876 (D.C. Cir. 1983) . . . . . . . . . . . . 8, 16

*Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

---

[*]Authorities chiefly relied upon are marked with asterisks.

*Harmelin v. Michigan*, 501 U.S. 957 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kennedy v. Louisiana*, 128 S.Ct. 2641 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*La Forest v. Board of Comm'rs of the District of Columbia*,
92 F.2d 547 (D.C. Cir. 1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*\*Maryland & D.C. Rifle & Pistol Ass'n, Inc. v. Washington*,
442 F.2d 123 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 7, 9, 16

*\*McIntosh v. Washington*, 395 A.2d 744 (D.C. 1978) . . . . . . . . . . . . 1, 3, 6, 7, 16

*Moore v. District of Columbia*, 12 App. D.C. 537 (1898). . . . . . . . . . . . . . . . . . 12

*Morton v. Mancari*, 417 U.S. 535 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Reynolds v. District of Columbia*, 614 A.2d 1285 (D.C. 1992) . . . . . . . . . . . 8, 16

*Roper v. Simmons*, 543 U.S. 551 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thomas v. District of Columbia*, 90 F.2d 424 (D.C. Cir. 1937) . . . . . . . . . . . . . 12

*Ullman v. District of Columbia*, 21 App. D.C. 241 (1903) . . . . . . . . . . . . . . . . . 12

*United States v. Menasche*, 348 U.S. 528 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Watt v. Alaska*, 451 U.S. 259 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**CONSTITUTIONS**

U.S. Const., Second Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

U.S. Const., Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S. Const., Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

Mass. Const., Art. 89, § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N.M. Const., Art. II, § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**UNITED STATES STATUTES**

18 U.S.C. § 921. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

18 U.S.C. § 922. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19

18 U.S.C. § 926. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26 U.S.C. § 5801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Act of June 30, 1906, Pub. L. No. 59-401 . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) . . . . . . . . . . . . . . . 3, 4

Home Rule Act, § 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Home Rule Act, § 717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Reorganization Plan No. 3, 81 Stat. 948 (1967) . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

**D.C. CODE**

D.C. Code § 1-203.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D.C Code  § 1-204.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.C. Code § 1-206.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1 D.C. Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

D.C. Code § 1-227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

D.C. Code § 1-303.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

D.C. Code § 1-303.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 5, 6, 8, 13, 14

D.C. Code §§ 1-201.01–1-207.71 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## FEDERAL REGULATIONS

27 C.F.R. § 478.124. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES AND ORDINANCES – OTHER JURISDICTIONS

Ca. Gov't. Code § 53071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ca. Penal Code § 11106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ca. Penal Code § 11186. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ca. Penal Code § 12020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ca. Penal Code § 12072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ca. Penal Code § 12280 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ca. Penal Code § 12285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Chicago Municipal Code §§ 8-20-010, -035, -170 . . . . . . . . . . . . . . . . . . . . . . . 19

Chicago Municipal Code § 8-20-050. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Chicago Municipal Code §§ 8-20-140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Clark Co. (NV) Code, § 12.04.110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Codified Ordinances of Cleveland § 674.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conn. Gen. Stat. §§ 53-202a, -d, -m, -n, & -o . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Haw. Rev. Stat. § 134-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Haw. Rev. Stat. § 134-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Haw. Rev. Stat. § 134-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

430 Ill. Comp. Stat. § 5/24-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

La. Rev. Stat. §§ 1781, 1783 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Las Vegas Municipal Code, § 10.66.140. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

M.C.L. § 28.429, repealed, P.A. 2008, No. 195, § 1. . . . . . . . . . . . . . . . . . . . . . . 16

Md. Code § 4-305. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Md. Code §§ 5-101, 5-129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Md. Code, Public Safety § 5-128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Md. Code § 5-129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Md. Code, Public Safety, § 5-131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

M.G.L. 140 § 121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

M.G.L. 140 § 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

M.G.L. 140 § 131M . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

N.J. Rev. Stat. §§ 2C:39-1w, 2C:58-12a & -12b . . . . . . . . . . . . . . . . . . . . . . . . . 18

N.Y. City Admin. Code, § 10-304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.Y. Consl. Laws § 265.00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

N.Y. Consl. Laws § 265.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

N.Y. General Business Law, § 396-ff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.Y. Penal Code § 400.00. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ohio R.C. § 9.68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ohio R.C. § 2923.126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Omaha Municipal Code, §§ 20-251, -253-54 . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Va. Code § 18.2-308.2:2(P)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## OTHER AUTHORITIES

Bureau of Alcohol, Tobacco, Firearms & Explosives, *State Laws & Published Ordinances - Firearms*, ATF Pub. 5300.5 (revised 2008) . . . . . . . . . . . . . . . 14, 15

Home Affairs Committee, House of Commons, Nov. 16, 2010, Q317 . . . . . . . . 13

Uniform Machine Gun Act Drafted by the National Conference of Commissioners on Uniform State Laws (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

# GLOSSARY

| | |
|---|---|
| ATF | Bureau of Alcohol, Tobacco, Firearms, and Explosives |
| Com. Rep. | Council of the District of Columbia, Committee on Public Safety & the Judiciary, Report on Bill 17-843, the "Firearms Control Amendment Act of 2008," Nov. 25, 2008 |
| Heller Br. | Appellants' Brief |
| NFA | National Firearms Act |
| NICS | National Instant Criminal Background Check System |

# SUMMARY OF ARGUMENT

1. After the Home Rule Act, gun laws passed by the D.C. Council must be "usual and reasonable" within the meaning of the federal Act of 1906, current D.C. Code § 1-303.43. The 1967 Reorganization Plan transferred this and other functions of the Commissioners to the Council. Those same functions were transferred to the new Council in the Home Rule Act, § 717(b) of which provided that no law in force on the effective date was "deemed amended or repealed" except as "specifically provided" or if "inconsistent with" the Act.

The Council relied on § 1-303.43 for the ordinance at issue and its predecessor enactments, and the latter were upheld on that basis in *McIntosh v. Washington*, 395 A.2d 744, 750 n.11 (D.C. 1978), and *Maryland & D.C. Rifle & Pistol Ass'n, Inc. v. Washington*, 442 F.2d 123, 125 (D.C. Cir. 1971). Both this Court and the D.C. Court of Appeals have continued to decide the validity of ordinances based on similar enabling acts authorizing "usual and reasonable" regulations.

2. The term "usual" refers to regulations that are "common or ordinary," such as exist generally in state and federal law. Where 30 states prohibited the death penalty for juveniles and the mentally retarded, it was found "unusual" under the Eighth Amendment despite 20 states not doing so. Insurance regulations, a curfew during riots, and a prohibition on fraud in realty matters were upheld as "usual," such

1

laws being commonplace in state and federal law.

The canon of constitutional avoidance is relevant to the meaning of "usual." Just as a court invalidated a Fifth Amendment deprivation as not "usual and reasonable," this Court could avoid the Second Amendment issue here if it finds the ordinance to violate § 1-303.43.

3. The challenged laws are not "usual" in the meaning of § 1-303.43. Attorney General Peter Nickles called them "the strictest gun laws in the United States."

*Registration*. Federal law prohibits any federal registration of firearms other than machineguns and short-barreled shotguns, and registrations do not expire. Hawaii is the only state to register all firearms. For mere firearm possession, no State requires fees, training, a written test, a vision test, or disclosure of one's occupation.

California registers handgun sales, and a handful of cities register handguns. The only other cities to register rifles and shotguns are New York and Chicago.

*"Assault weapons."* The United States and forty-three states treat semiautomatic firearms the same as other firearms. Four states restrict "assault weapons" but allow registered or grandfathered guns, and three states have more minimal restrictions. The District prohibits the possession of broadly-defined "assault weapons," without exception. A tiny handful of other cities restrict such guns under inconsistent definitions.

*Ammunition Feeding Devices*. The District bans possession of all magazines holding more than ten rounds. Magazines are not regulated by the United States or by most states and cities. No state bans possession of all such magazines.

4. The federal courts do not defer to the D.C. Court of Appeals' interpretation of the 1906 Act or of similarly worded federal statutes. Such deference is accorded only regarding interpretations of local law. However, when *McIntosh* grounded District firearm regulations in § 1-303.43, it followed this court's opinion in *Maryland & D.C. Rifle*.

## ARGUMENT

**(1) After the Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) (codified at D.C. Code §§ 1-201.01–1-207.71 (2001)), do gun laws passed by the District of Columbia Council have to be "usual and reasonable" within the meaning of the federal Act of June 30, 1906, Pub. L. No. 59-401, which is currently codified at D.C. Code § 1-303.43?**

Yes. The version of the 1906 Act now codified in § 1-303.43 states in part: "The Council of the District of Columbia is hereby authorized and empowered to make . . . all such usual and reasonable police regulations . . . as the Council may deem necessary for the regulation of firearms . . . ." The 1906 Act referred to "the

Commissioners,"[1] but the 1967 Reorganization Plan established the Council, to which was transferred functions such as regulation under today's § 1-303.43.[2]

The Home Rule Act states in part that "the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of this Act . . . ." § 302, Pub. L. 93-198, 87 Stat. 774 (1973), current D.C. Code 1-203.02. The legislative power of the Council under the 1967 Plan was transferred to the new Council by § 404(a), which provides:

> Subject to the limitations specified in title VI of this Act, the legislative power granted to the District by this Act is vested in and shall be exercised by the Council in accordance with this Act. In addition, except as otherwise provided in this Act, all functions granted to or imposed upon, or vested in or transferred to the District of Columbia Council, as established by Reorganization Plan Numbered 3 of 1967, shall be carried out by the Council in accordance with the provisions of this Act.[3]

_____

[1] § 4, Act of June 30, 1906, Pub. L. No. 59-401, 34 Stat. 809.

[2] § 201, Reorganization Plan No. 3 of 1967, 81 Stat. 948. § 402, *id.*, provided in part:

> The following regulatory and other functions now vested in the Board of Commissioners of the District of Columbia are hereby transferred to the Council . . . [:]
> (4) Making regulations under D.C. Codes, secs. . . . 1-227 [§ 4 of the 1906 Act as then codified].

[3] *See also id.*, § 714 ("references in such statute . . . to an officer or agency from which a transfer is made by this Act shall be held and considered to refer to the

Accordingly, the current Council has those powers which the former Council had under the 1967 Reorganization Plan, including the power to make regulations under what is now § 1-303.43. Section 717(b) provides:

> No law or regulation which is in force on the effective date of title IV of this Act shall be deemed amended or repealed by this Act except to the extent specifically provided herein or to the extent that such law or regulation is inconsistent with this Act, but any such law or regulation may be amended or repealed by act or resolution as authorized in this Act, or by Act of Congress . . . .

Thus, § 4 of the act of June 30, 1906 was *not* to be "deemed amended or repealed," because it was not "specifically provided" in or "inconsistent with" the Home Rule Act. Nor may the Council amend or repeal § 4 because such is not "authorized in this Act."[4]

Moreover, "repeals by implication are not favored." *Morton v. Mancari,* 417 U.S. 535, 549 (1974). "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551. "The intention of the legislature to repeal must

_____

officer or agency to which the transfer is made.").

[4]"The Council shall have no authority to pass any act contrary to the provisions of this chapter except as specifically provided in this chapter . . . ." *Id.*, § 602.

5

be 'clear and manifest.'" *Watt v. Alaska,* 451 U.S. 259, 267 (1981).[5]

Section 1-303.43 (codified then as § 1-227) was "the section on which the Council relied for its authority to enact the Firearms Act." *McIntosh v. Washington*, 395 A.2d 744, 750 n.11 (D.C. 1978).[6] *McIntosh* explained:

> The Home Rule Act, D.C. Code 1978 Supp., § 1-124 [current 1-203.02], delegates to the Council legislative power over "all rightful subjects of legislation within the District," and § 1-144(a) of that Act, D.C. Code 1978 Supp., vests the Council with all legislative functions granted to or vested in its predecessor District of Columbia Council. One of these functions is provided for in D.C. Code 1973, § 1-227 [current 1-303.43]
> . . . .

*McIntosh, id.* at 750 n.11 (citing *Maryland & D.C. Rifle & Pistol Ass'n, Inc. v. Washington*, 442 F.2d 123 (D.C. Cir. 1971)).

*McIntosh* found that the Firearms Act was "a legitimate exercise of the authority" under § 1-227.[7] *Id.* at 750-51. Similarly, in *Maryland & D.C. Rifle*, the

---

[5]"It is our duty 'to give effect, if possible, to every clause and word of a statute,' . . . rather than to emasculate an entire section, as the Government's interpretation requires." *United States v. Menasche*, 348 U.S. 528, 539 (1955). "When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Christensen v. Harris County*, 529 U.S. 576, 583 (2000).

[6]It did so again in the Firearms Registration Amendment Act of 2008, § 2.

[7]*McIntosh* also found no inconsistency between § 1-206.02(a)(9), which prohibited any enactment relating to the criminal code for two years, and § 1-204.04(a), which vested the Council with all legislative functions granted to its predecessor Council. 395 A.2d at 750-51 & n.11, 13.

District "claim[ed] authorization by Section 1-227," which permitted "usual and reasonable" firearm regulations. 442 F.2d at 125. The court agreed: "We find . . . ample warrant in Section 1-227 for adoption of the regulations . . . ." *Id*. at 126.[8]

Like now, in *Maryland & D.C. Rifle*, the District argued alternatively that § 1-227 was repealed by implication by a broader act of Congress, but the court rejected that argument because the provision in fact "was not repealed."[9] *Id*. at 131.

In *Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1327 (D.C. Cir. 1973), insurance regulations prohibiting discrimination "were promulgated pursuant to 1 D.C. Code § 226," which authorized "reasonable and usual police regulations" necessary to protect person and property. That standard was met because "the regulation of insurance" was "commonly exercised by states." *Id*. at 1328.

The same enabling act was applied in *Fulton v. District of Columbia,* 2 App. D.C. 431, 438-39 (D.C. Cir. 1894), to invalidate a pawnbroker ordinance as follows:

> We do decide that, when Congress delegated to the Commissioners the power to enact "usual and reasonable police regulations" for the District of Columbia, it did not thereby authorize them to make ordinances that would take the property of citizens away from them even for the short period of twenty-four hours. There is nothing to show that the provision

---

[8]Like *McIntosh*, *Maryland & D.C. Rifle* did not "decide whether particular provisions of the regulations in suit, as distinguished from the regulations as a whole, exceed the Council's authority . . . ." *Id.* at 125 n.9.

[9]The provision was mistakenly referred to as § 1-224.

is a usual one; and certainly it is not reasonable.

*Id*. at 438.

This Court has continued to apply these provisions. *See Green v. District of Columbia*, 710 F.2d 876, 877 (D.C. Cir. 1983) (noting "the background, authority for, and legal validity of" gambling regulation under D.C. Code § 1-303.03); *Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*, 919 F.2d 148, 150 (D.C. Cir. 1990) ("usual and reasonable" factors found regarding permit to march "on grounds traditionally made available"). So has the D.C. Court of Appeals. *See Reynolds v. District of Columbia*, 614 A.2d 1285, 1288-89 (D.C. 1992) (regulation not "a reasonable regulation designed to control traffic").

In sum, after passage of the Home Rule Act, both this Court and the D.C. Court of Appeals have continued to apply acts of Congress authorizing "usual and reasonable" regulations such as § 1-303.43. The District has done so both in its legislative capacity and in litigation. It is unknown which and how many acts of Congress would be nullified under the District's expansive argument here, but it would open a Pandora's box that would throw into doubt all existing jurisprudence.

**(2) What does the term "usual" mean in this statute? Is the canon of constitutional avoidance relevant to that question?**

Explaining why "usual and reasonable" firearms regulations included more

than just restrictions on hunting, *Maryland & D.C. Rifle* stated that "our function is to take this language for what it plainly says, for 'there is . . . no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.'" 442 F.2d at 126 (citation omitted). As an example, the House committee report accompanying the 1906 Act referenced a law to address "accident[s] from indiscriminate discharge of firearms." *Id.* at 127. Regulation of the discharge of firearms in urban areas was and is commonplace.

The term "usual" is the converse of "unusual," a term appearing in the Eighth Amendment. *Roper v. Simmons*, 543 U.S. 551, 564 (2005), found that "30 States prohibit the juvenile death penalty," making it an "unusual" punishment. Similarly, *Atkins* v. *Virginia*, 536 U.S. 304, 316 (2002), decided that executions of mentally retarded criminals "has become truly unusual . . . ." "When *Atkins* was decided, 30 States prohibited the death penalty for the mentally retarded." *Roper*, 543 U.S. at 564. More recently, *Kennedy v. Louisiana*, 128 S.Ct. 2641, 2652 (2008), found that "44 States have not made child rape a capital offense," making it even more unusual.

The term "unusual" means "such as does not occur in ordinary practice" or "is not common use." *Harmelin v. Michigan*, 501 U.S. 957, 976 (1991) (quoting

Webster's dictionaries from 1828 and 1954) (brackets eliminated).[10]  Mandatory

penalties "are not unusual in the constitutional sense, having been employed in

various forms throughout our Nation's history. . . . They were also common in the

several States . . . ." *Id.* at. 994-95.  That cannot be said about the District's firearm

prohibitions.

In *Firemen's Ins. Co.*, *supra*, *rev'g* 333 F. Supp. 951 (D. D.C. 1971), the

district court had voided an ordinance on the basis that "the regulation of insurance

is not 'a "usual" or valid exercise of police power by a municipality,'" and instead

was a usual subject for a state or for Congress.  333 F. Supp. at 954 (D. D.C. 1971).

This Court disagreed because the District exercised functions not only "those which

are commonly exercised by cities but others, like . . . the regulation of insurance . .

., which are commonly exercised by states.'" 483 F.2d at 1328.  Further, the District's

ban on arbitrary cancellations and red lining reflected Congressional policy

nationwide. *Id*. at 1329-31.  What was "usual" was decided by reference to what was

common in state and federal law.

*Glover v. District of Columbia,* 250 A.2d 556, 558-59 (D.C. 1969), concerned

the curfew imposed in the wake of the District riots of 1968, which was upheld under

---

[10]*See Black's Law Dictionary* (2d ed. 1910) (defining usual to mean "ordinary" or "customary"); *Webster's New World Dictionary* (1991) (defining usual to mean "such as is in common or ordinary use; such as is most often seen, heard, used, etc.").

the authority of old § 1-226 (current § 1-303.03) to enact "reasonable and usual police regulations" to protect life and property. "Since the curfew has become a usual device employed by municipalities to quell riots, we conclude that the curfew applied here was a usual police regulation within the scope of Section 1-226." *Id*. at 560. Indeed, it is historically and universally usual to suppress riots in such manner.[11]

*Filippo v. Real Estate Comm'n of the District of Columbia*, 223 A.2d 268, 270 (D.C. 1966), upheld an ordinance prohibiting false representations in real estate transactions based on race: "The Supreme Court has settled beyond question that 'the Commissioners by the Joint Resolution of February 26, 1892, 27 Stat. 394, were vested with local legislative power as respects 'reasonable and usual police regulation.'" *Id*., quoting *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 111 (1953) (holding anti-discrimination law valid as "reasonable and usual police regulation" of restaurants).

*Crane v. District of Columbia*, 289 F. 557, 558 (D.C. App. 1923), considered whether the District had power to forbid unlicensed vendors from selling goods at public places. Congress authorized "usual and reasonable police regulations, for 11 distinct and clearly specified purposes," including "to regulate," "to prohibit," or "to

---

[11]*See* 4 Blackstone, *Commentaries* *142 ("Offenses against the public peace" included "the riotous assembling of twelve persons or more, and not dispersing upon proclamation.").

regulate or prohibit."[12] *Id*. at 560. The ordinance was void because the District was authorized only to regulate, not to prohibit, vendors. "Congress . . . could have authorized such a sweeping, not to say unusual and unreasonable, regulation, but it chose to limit the power of the commissioners to such – 'reasonable and usual police regulations . . . .'" *Id*. at 561.

In sum, if regulations "are unusual or unreasonable, they would be inoperative and void, . . . because, in such case they would not be within the power delegated by Congress." *Moore v. District of Columbia*, 12 App. D.C. 537, 540 (1898).[13]

**Is the canon of constitutional avoidance relevant to the question of the meaning of the term "usual" in this statute?**

Yes. *Fulton* opined that a pawnbroker regulation violated the constitutional right not to be deprived of property without due process of law, because it "deprives a man of the right to use that of which he is the unquestioned owner . . . ." 2 App. D.C. at 437. But the court avoided the constitutional question by finding the

---

[12] *See Thomas v. District of Columbia*, 90 F.2d 424, 426 (D.C. Cir. 1937) (authority to make "usual and reasonable police regulations . . . To *prohibit* the deposit upon the streets" of injurious articles) (emphasis added).

[13] *See Ullman v. District of Columbia*, 21 App. D.C. 241 (1903) ("To keep a record of transactions is now usual . . . in all classes of business"); *La Forest v. Board of Comm'rs of the District of Columbia*, 92 F.2d 547, 549-50 (D.C. Cir. 1937) ("if such a case [of unreasonable regulations] should arise the right of review by this court insures protection against such abuse of power").

restriction not to be a "usual and reasonable" regulation:

> Whether Congress itself could make such a provision, in the face of the constitutional guaranty, may well be doubted. But this we are not called upon to decide. We do decide that, when Congress delegated to the Commissioners the power to enact "usual and reasonable police regulations" for the District of Columbia, it did not thereby authorize them to make ordinances that would take the property of citizens away from them even for the short period of twenty-four hours. There is nothing to show that the provision is a usual one; and certainly it is not reasonable.

*Id*. at 438.

Following the rule of constitutional avoidance, the Second Amendment issue need not be decided here if the prohibitions are found to violate D.C. Code § 1-303.43.

**(3) Are the challenged D.C. laws "usual" within the meaning of this statute?**

Attorney General Peter Nickles answered this question best: "I think it fair to say that most people in the United States regard Washington DC as the jurisdiction with the strictest gun laws in the United States." Home Affairs Committee, House of Commons, Nov. 16, 2010, Q317.[14] He added that the District is "out of line with

---

[14]http://www.publications.parliament.uk/pa/cm201011/cmselect/cmhaff/uc447-v/uc44701.htm.

many other states in the country that effectively have no gun laws." *Id.*[15]

The restrictions here are not "usual" firearms regulations as required by D.C. Code § 1-303.43. *See* Heller Br. 53-57. Usual regulations include "longstanding prohibitions" on firearm possession by felons and the mentally ill, regulations on carrying firearms in sensitive places, or conditions on commercial arms sales. *District of Columbia v. Heller*, 128 S.Ct. 2783, 2816-17 (2008). Neither registration nor outright bans are traditional regulations for mere possession of ordinary firearms.

Under the laws of the United States and of virtually every State, a law-abiding citizen may possess a firearm without being subjected to onerous registration requirements, and possession of the firearms and magazines that the District bans is generally lawful, with rare exceptions. To determine what is "usual" at the state and local level, focus must be on state laws, since the states generally preempt local firearm ordinances.[16] A handful of cities are the exception.

---

[15]M.P. Aidan Burley noted that "here in Britain we have some of the strictest in Europe if not the world. Why do you think we still have so many problems with guns being used in crime . . . with all of our tight controls?" Nickles responded that "guns move across borders. . . . [W]e have the strictest gun laws. We literally have thousands of guns in this city that have not legally been registered." *Id.* at Q318.

[16]*E.g.*, Ca. Gov't. Code § 53071 ("It is the intention of the Legislature to occupy the whole field of regulation of the registration . . . of . . . firearms . . . , and such provisions shall be exclusive of all local regulations"). Forty-nine states have preemption of some kind. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives,

**Registration**.  Federal law prohibits any ATF regulation to require that records

of firearm transactions "be recorded at or transferred to a facility . . . controlled by the

United States or any State or any political subdivision thereof," and prohibits "any

system of registration of firearms, firearms owners, or firearms transactions or

dispositions."[17]  Almost identical language appears in the Brady Act, which created

the NICS background check system.[18]

The National Firearms Act (NFA) provides for registration of only a narrow

class of firearms, such as machineguns and short-barreled shotguns.  26 U.S.C. §§

5841, 5845.[19]  Registration of an NFA firearm does not, however, require a written

---

*State Laws & Published Ordinances - Firearms*, ATF Pub. 5300.5 (revised 2008), xi-xii ("Local Government Limits (Preemption)," listing 46 states). http://www.atf.gov/publications/download/p/atf-p-5300-5.pdf.  Three of the other four states also have preemption.  *See Dwyer v. Farrell,* 193 Conn. 7, 475 A.2d 257 (1984); Mass. Const., Art. 89, § 6; N.M. Const., Art. II, § 6.  Only Hawaii has no preemption.

[17]18 U.S.C. § 926(a).  To receive a firearm from a licensed dealer, federal law requires only the information necessary to identify the transferee, including name, sex, address, date and place of birth, height, weight and race.  27 C.F.R. § 478.124(c).

[18]§ 103(i), P.L. 103-159, 107 Stat. 1536 (1993).  *See also* 18 U.S.C. § 922(t)(2)(C) (requiring destruction of background check records).

[19]Originally passed as the NFA, 48 Stat. 1236 (1934), similar laws were passed by some states in the same era and remain on the books today. *E.g*., La. Rev. Stat. §§ 1781, 1783.  *See* Uniform Machine Gun Act Drafted by the National Conference of Commissioners on Uniform State Laws (1932), § 4.

test, training, a vision test, disclosure of one's occupation, a ballistics test, or in-person appearances, and never expires. No limit exists on registering multiple NFA firearms. *See* 26 U.S.C. § 5801 *et seq.*

The committee report states: "Hawaii and the District are the only states [*sic*] that require all firearms to be registered." Com. Rep. at 3. But under Hawaiian law, only the person's identity and firearm description is required, the registration never expires, and "[n]o fee shall be charged for the registration." Haw. Rev. Stat. § 134-3(a), (b), (e). Training is required only for handgun acquisition. *Id.*, § 134-2(g).

California registers the sale, but not possession, of handguns, and does not register rifles or shotguns. Ca. Penal Code § 11106(b), (c).[20] New York requires a license to possess or carry a handgun. N.Y. Penal Code § 400.00.

Among cities, only Chicago competes with the District for having the most burdensome registration scheme. Chicago Municipal Code §§ 8-20-140 *et seq.*[21] New York City requires registration of rifles and shotguns, but training and vision testing is not required, and "[n]o fee shall be charged for a certificate of registration."

---

http://www.titleii.com/bardwell/1932_uniform_machine_gun_act.txt.

[20]Michigan repealed its prior requirement that pistols be inspected and recorded. M.C.L. § 28.429, repealed, P.A. 2008, No. 195, § 1.

[21]*But see* 430 Ill. Comp. Stat. § 5/24-10 (use in self defense is a defense to failure to register under a local ordinance).

N.Y. City Admin. Code, § 10-304(a), (f).  No other jurisdiction could be located that requires registration of rifles and shotguns.[22]  A handful of localities require registration of handguns, but not rifles and shotguns.[23]

For mere firearm possession, no State requires fees, training, a written test, a vision test, or disclosure of one's occupation.  No state requires owners to submit their handguns for ballistics tests.[24]  Only three states restrict "purchase" of more than one handgun per month, and they broadly exempt persons whose handgun has been lost or stolen, collectors, permit holders, and other acquisitions.[25]

*"Assault weapons."*  The United States and almost all states treat semiautomatic firearms the same as other firearms.  The District prohibits "assault weapons" without any exception, including scores of semiautomatic guns by name or by having one generic feature.  An expired federal law named only a few

---

[22]As discussed below, a small number of states require registration of "assault weapons," which the District bans altogether.

[23]Codified Ordinances of Cleveland § 674.05 (which is preempted by Ohio R.C. §§ 9.68 & 2923.126); Omaha Municipal Code, §§ 20-251, -253-54; Clark Co. (NV) Code, § 12.04.110; Las Vegas Municipal Code, § 10.66.140.

[24]Only two states require manufacturers that ship new handguns into those states to test them.  Md. Code, Public Safety, § 5-131; N.Y. General Business Law, § 396-ff.

[25]Ca. Penal Code § 12072(a)(9); Md. Code Public Safety § 5-128; Va. Code § 18.2-308.2:2(P)(2) (applies only to purchase from dealer).

semiautomatic guns as "assault weapons" and required two generic features; all such guns owned before enactment were grandfathered.[26]

Connecticut and New York define "assault weapon" to require two generic features, and grandfather those possessed before 1994.[27] California prohibits "assault weapons," but exempts registered guns.[28] New Jersey defines "assault firearm" only by name, and allowed those "used for legitimate target-shooting purposes" to be registered.[29] Three others states have more minimal restrictions.[30]

In sum, forty-three states treat semiautomatic firearms the same as other firearms. Four states restrict "assault weapons" but allow registered or grandfathered guns, and three states have more minimal restrictions.

The District has named only nine cities in the entire U.S. with "assault weapon"

---

[26]18 U.S.C. §§ 921(a)(30), 922(v) (1994-2004).

[27]Conn. Gen. Stat. §§ 53-202a(a)(3), 53-202d, -m, -n, & -o; N.Y. Consl. Laws § 265.00(22) & (e)(v).

[28]Ca. Penal Code §§ 12280, 12285, 11186.

[29]N.J. Rev. Stat. §§ 2C:39-1w, 2C:58-12a & -12b.

[30]Massachusetts restricts a "large capacity weapon," but "any person" may apply for a license. M.G.L. 140 §§ 121, 131. Maryland regulates "assault weapons" similar to handguns, Md. Code §§ 5-101(p), 5-129 *et seq.*; it bans "assault pistols" only if unregistered. § 4-303. Hawaii restricts transfer, not possession, only of "assault pistols." Haw. Rev. Stat. § 134-4(e).

bans.[31]  Chicago has one, although its definitions are not as broad as the District's.[32]

*Ammunition Feeding Devices*.  The District bans all magazines holding more than ten rounds.  Magazines are not regulated by the United States or by most states and cities.

The expired federal law prohibited magazines holding over ten rounds only if made after 1994.[33]  California restricts sale but not possession.[34]  Massachusetts and New York ban possession only of post-1994 magazines.[35]  No state bans possession of all magazines holding more than ten rounds.[36]  Chicago bans possession of magazines holding more than 12 rounds.[37]

In sum, the District's laws on firearm registration, "assault weapons," and

---

[31]Mem. Pts. & Auth. in Support of Mot. for Sum. Jud. 6 n.7, Appx. 24-30.  Two are in Ohio, which has state preemption, under which the ordinances are void.  Ohio R.C. §§ 9.68 & 2923.126.

[32]Chicago Municipal Code §§ 8-20-010, -035, -170.

[33]18 U.S.C. §§ 921(a)(31), 922(w) (1994-2004).

[34]Ca. Penal Code §§ 12020(a)(2).

[35]M.G.L. 140 § 131M;  N.Y. Consl. Laws § 265.00(23), 265.02(8).

[36]Hawaii bans possession only of such magazines for pistols.  Haw. Rev. Stat. § 134-8(c).  Maryland restricts transfer of a magazine holding more than 20 rounds. Md. Code § 4-305.

[37]Chicago Municipal Code §§ 8-20-010, 8-20-050.

magazines stand alone or virtually alone, and are in no sense "usual."

**(4) Does the D.C. Court of Appeals' interpretation of the congressionally enacted Act of June 30, 1906, or of similarly worded federal statutes, receive deference from the federal courts? If so, under what circumstances?**

The answer is no. *Bliley v. Kelly,* 23 F.3d 507 (D.C. Cir. 1994), held that, "while we must defer to that court [D.C. Court of Appeals] on its interpretation of purely local law, . . . we owe it no such deference on matters of federal law." *Id*. at 511, citing *Hall v. Ford*, 856 F.2d 255, 267 (D.C. Cir. 1988).

Based on the above, the federal courts would not defer to the D.C. Court of Appeals' interpretation of the congressionally enacted Act of June 30, 1906, or of similarly worded federal statutes. However, the D.C. Court of Appeals interpreted the enabling act authorizing "usual and reasonable" regulations as still binding after passage of the Home Rule Act, *McIntosh*, 395 A.2d at 747, 750 n.11, and did so adhering to this Court's decision in *Maryland & D.C. Rifle*, 442 F.2d at 125-26. Both courts continue to apply the various enabling acts with the "usual and reasonable" language. *Compare Green*, 710 F.2d at 877, & *Christian Knights of the Ku Klux Klan*, 919 F.2d at 150, *with Reynolds*, 614 A.2d at 1288-89.

## CONCLUSION

The judgment below should be reversed.

Respectfully Submitted,

/s/ Stephen P. Halbrook
STEPHEN P. HALBROOK
D.C. Bar No. 379799

/s/ Richard E. Gardiner
RICHARD E. GARDINER
D.C. Bar No. 386915

3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been

prepared in a proportionally spaced typeface using Word Perfect 12 in 14-point Times

New Roman.

/s/ Richard E. Gardiner
RICHARD E. GARDINER

# CERTIFICATE OF SERVICE

I certify that on December 22, 2010, electronic copies of this brief were served

through the Court's CM/ECF system and two (2) paper copies were mailed by first-

class mail, postage prepaid, to:


Todd S. Kim
Solicitor General
Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001

William J. Olson
370 Maple Avenue West
Suite 4
Vienna, VA 22180-5615

Chrisellen Kolb
Deputy Chief, Appellate Division
USAO/DC
USAO/Appellate Division
555 Fourth Street, N.W. Room 8104
Washington, D.C. 20530

Matthew Shors
O'Melveny & Meyers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001

Paul R.Q. Wolfson
Wilmer Culter Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006


/s/ Richard E. Gardiner
RICHARD E. GARDINER