**ARGUED ON NOVEMBER 15, 2010**
_____

No. 10-7036
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

DICK ANTHONY HELLER, et al., Plaintiffs-Appellants,

v.

DISTRICT OF COLUMBIA, et al., Defendants-Appellees.
_____

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
_____

**APPELLEES' SUPPLEMENTAL BRIEF**
_____

IRVIN B. NATHAN
Acting Attorney General for the District of
Columbia

TODD S. KIM
Solicitor General

DONNA M. MURASKY
Deputy Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 724-6609

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ..................................................................................2

    I.    THE COUNCIL HAS POWER TO PASS GUN LAWS UNDER THE HOME RULE ACT, WHICH SUPERSEDES EARLIER LIMITS SUCH AS THOSE IN THE 1906 ACT.................................2

        A.    The history, text, and purposes of the Home Rule Act establish that it supersedes earlier limits on local authority over firearms ............................................................2

        B.    Precedent supports the Council's authority here ......................10

    II.    A LAW IS "USUAL" UNDER THE 1906 ACT WHEN THE LAW IS OF A TYPE FOUND IN ANY OTHER JURISDICTION..................................................................12

        A.    Under current precedent, the word "usual" has no independent effect and, under older precedent, a law is "usual" if any other jurisdiction has or had laws covering similar subject matter ..................................................12

        B.    The canon of constitutional avoidance is not relevant.............15

    III.    THESE GUN LAWS ARE "USUAL" UNDER THE 1906 ACT......15

    IV.    THIS COURT IS BOUND BY DCCA DECISIONS ON LOCAL LAW ISSUES SUCH AS THE SCOPE OF THE COUNCIL'S AUTHORITY...................................................................18

CONCLUSION ..............................................................................20

# TABLE OF AUTHORITIES[*]

## *Cases*

*Am. Sec. & Trust Co. v. Rudolph*, 38 App. D.C. 32 (D.C. Cir. 1912) ....................19

*Atchison v. D.C.*, 585 A.2d 150 (D.C. 1991) ............................................................11

*B. & O. R.R. Co. v. D.C.*, 10 App. D.C. 111 (1897) .............................................14

*Bliley v. Kelly*, 23 F.3d 507 (D.C. Cir. 1994) ...........................................11, 19, 20

*Callan v. D.C.*, 16 App. D.C. 271 (1900) ...............................................................13

*Christian Knights of the Ku Klux Klan Invisible Empire v. D.C.*,
919 F.2d 148 (D.C. Cir. 1990) ...............................................................................12

*Clark v. Martinez*, 543 U.S. 371 (2005) ..................................................................15

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) .................................................8

*Convention Ctr. Referendum Comm. v. D.C. Bd. of Elections & Ethics*,
441 A.2d 889 (D.C. 1981) (*en banc*) .......................................................................11

*Coughlin v. D.C.*, 25 App. D.C. 251 (1905) ...........................................................14

*Crane v. D.C.*, 289 F. 557 (D.C. Cir. 1923)............................................................14

*D.C. v. Greater Wash. Cent. Labor Council*, 442 A.2d 110 (D.C. 1982) ...............11

*\*D.C. v. John R. Thompson Co.*, 346 U.S. 100 (1953)...................................3, 4, 15

*D.C. v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394 (D.C. 1989) ....................11

*Decatur Liquors v. D.C.*, 478 F.3d 360 (D.C. Cir. 2007).................................19, 20

*\*Dimond v. D.C.*, 792 F.2d 179 (D.C. Cir. 1986),............................................19, 20

*Envtl. Def. Fund v. EPA*, 598 F.2d 62 (D.C. Cir. 1978)...........................................8

*FCC v. Fox Television Stations*, 129 S. Ct. 1800 (2009)........................................15

*Fed. Power Comm'n v. S. Cal. Edison Co.*, 376 U.S. 205 (1964)...........................14

*\*Filippo v. Real Estate Comm'n*, 223 A.2d 268 (D.C. 1966) ..........................13, 16

*\*Firemen's Ins. v. Washington*, 483 F.2d 1323 (D.C. Cir. 1973) ..............12–14, 19

*Fulton v. D.C.*, 2 App. D.C. 431 (1894) .................................................8, 12, 14, 15

*Green v. D.C.*, 710 F.2d 876 (D.C. Cir. 1983).......................................................12

---

[*]     Authorities upon which we chiefly rely are marked with asterisks.

*Hall v. C&P Tel. Co.*, 793 F.2d 1354 (D.C. Cir. 1986) ............................................9

*Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) ..........................................................18

*Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003) ........18

*In re Any & All Funds*, 613 F.3d 1122 (D.C. Cir. 2010) ...........................................7

*Jackson v. D.C. Bd. of Elections & Ethics*, 999 A.2d 89 (D.C. 2010) (*en banc*) ....11

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ...................................................................8

*Marijuana Policy Project v. U.S.*, 304 F.3d 82 (D.C. Cir. 2002) ...........................11

*Maryland & D.C. Rifle & Pistol Ass'n v. Washington*,
442 F.2d 123 (D.C. Cir. 1971) ..........................................................................12, 16

*McIntosh v. Washington*, 395 A.2d 744 (D.C. 1978) ...............................10, 13, 16

*Morton v. Mancari*, 417 U.S. 535 (1974) ................................................................8

*Navegar, Inc. v. U.S.*, 192 F.3d 1050 (D.C. Cir. 1999) ..........................................17

*Newspapers, Inc. v. MPD*, 546 A.2d 990 (D.C. 1988) .....................................3, 4, 7

*Newsweek Magazine v. D.C. Comm'n on Human Rights*,
376 A.2d 777 (D.C. 1977) .......................................................................................13

*Noble v. U.S. Parole Comm'n*, 82 F.3d 1108 (D.C. Cir. 1996) ..............................20

*Pernell v. Southall Realty*, 416 U.S. 363 (1974) ...................................................19

*Railco Multi-Constr. Co. v. Gardner*, 902 F.2d 71 (D.C. Cir. 1990) .......................9

*Reynolds v. D.C.*, 614 A.2d 1285 (D.C. 1992) ..................................................11, 12

*Sabre, Inc. v. DOT*, 429 F.3d 1113 (D.C. Cir. 2005)................................................8

*Seegars v. Ashcroft*, 297 F. Supp. 2d 201 (D.D.C. 2004),
*aff'd in part, rev'd in part*, 396 F.3d 1248 (D.C. Cir. 2005) ..................................10

*Spivey v. Barry*, 665 F.2d 1222 (D.C. Cir. 1981) ..................................................11

*Springfield, Inc. v. Buckles*, 292 F.3d 813 (D.C. Cir. 2002).................................17

*Sprint Commc'ns v. Kelly*, 642 A.2d 106 (D.C. 1994) ..........................................11

*Taylor v. D.C.*, 24 App. D.C. 392 (1904) ...............................................................13

*U.S. v. Edmond*, 924 F.2d 261 (D.C. Cir. 1991).....................................................19

*Utz v. Cullinane*, 520 F.2d 467 (D.C. Cir. 1975).....................................................9

*Virginia v. Moore*, 553 U.S. 164 (2008)................................................................18

## Statutes, Regulations, and Municipal Codes

Act of February 21, 1871, 16 Stat. 419 ...................................................3

Act of February 26, 1892, 27 Stat. 394 (1892 Act),
codified at D.C. Code § 1-303.03 ......................................... 1–4, 6, 9, 12, 13, 15, 19

Act of June 30, 1906, 34 Stat. 808 (1906 Act),
codified at D.C. Code § 1-303.43 ......................................... 1–4, 6–10, 12, 13, 15

*District of Columbia Home Rule Act (HRA),
Pub. L. No. 93-198, 87 Stat. 774 (1973)...........................................1, 2, 4–15, 19, 20

18 U.S.C. 921(a)(30) (2000) ...................................................17

18 U.S.C. 921(a)(31) (2000) ...................................................17

18 U.S.C. 922(v) (2000) ...................................................17

18 U.S.C. 922(w) (2000) ...................................................17

28 U.S.C. 1257 ...................................................19

28 U.S.C. 1331 ...................................................19

28 U.S.C. 1343 ...................................................19

28 U.S.C. 1366 ...................................................19

D.C. Code § 1-201.02(a) ...................................................5

*D.C. Code § 1-203.02 ...................................................4, 8, 9

*D.C. Code § 1-204.04(a) ...................................................4, 6, 7, 9, 10

D.C. Code § 1-204.22 ...................................................7

D.C. Code §§ 1-206.01 to 1-206.04 ...................................................4

D.C. Code § 1-206.02 ...................................................4

D.C. Code § 1-206.02(a)(3) ...................................................9

D.C. Code § 1-206.02(a)(9) ...................................................10

D.C. Code § 1-206.02(c) ...................................................20

D.C. Code § 1-207.14(a) ...................................................9

D.C. Code § 1-207.17(b) ...................................................9

D.C. Code § 1-303.01 ...................................................6

D.C. Code § 1-303.03 ...................................................1–4, 6, 9, 12, 13, 15

D.C. Code § 1-303.43 ............................................ 1–4, 6–10, 12, 13, 15

D.C. Code § 11-102 ........................................................19

Reorganization Plan No. 3 of 1967, 81 Stat. 948 ...................................3, 4

Mich. Comp. Laws § 28.422(5) ................................16

Clark County, Nev., Mun. Code §§ 12.04.110, .200 ..............................16

*Legislative History*

H.R. Rep. No. 93-482 (1973) .........................................................5, 7, 9

S. Rep. No. 93-219 (1973) ...............................................5, 9

House Committee on the District of Columbia, *Home Rule for the District of Columbia 1973–1974: Background and Legislative History of H.R. 9056, H.R. 9682, and Related Bills Culminating in the District of Columbia Self-Government and Governmental Reorganization Act* (*HRA History*) (Comm. Print 1974) .......................................................5, 7, 9

*Other*

Legal Community Against Violence, *Regulating Guns in America* (*LCAV Survey*) (2008 ed.), http://www.lcav.org/publications-briefs/ reports_analyses/RegGuns.entire.report.pdf ....................................................16, 17

Eugene McQuillin, *The Law of Municipal Corporations* (3d ed. 2007) ...........13, 16

## GLOSSARY

| | |
|---|---|
| 1892 Act | Act of February 26, 1892, 27 Stat. 394, codified at D.C. Code § 1-303.03 |
| 1906 Act | Act of June 30, 1906, 34 Stat. 809, codified at D.C. Code § 1-303.43 |
| Board | Board of Commissioners |
| Council | Council of the District of Columbia (post-Home Rule Act) |
| D.C. Council | District of Columbia Council (pre-Home Rule Act) |
| DCCA | District of Columbia Court of Appeals |
| HRA | District of Columbia Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) |
| *HRA History* | *Home Rule for the District of Columbia 1973–1974: Background and Legislative History of H.R. 9056, H.R. 9682, and Related Bills Culminating in the District of Columbia Self-Government and Governmental Reorganization Act* (Comm. Print 1974) |
| LCAFDs | large capacity ammunition feeding devices |
| *LCAV Survey* | Legal Community Against Violence, *Regulating Guns in America: An Evaluation and Comparative Analysis of Federal, State and Selected Local Gun Laws* (2008 ed.), http://www.lcav.org/publications-briefs/reports_analyses/RegGuns.entire.report.pdf |
| PSBr | Plaintiffs-Appellants' Supplemental Brief |
| SA | Appellees' Statutory Addendum |

## SUMMARY OF ARGUMENT

1.  In the District of Columbia Home Rule Act (HRA), Pub. L. No. 93-198, 87 Stat. 774 (1973), Congress granted broad legislative power to the Council of the District of Columbia (Council) and expressly declared that this power is limited only by the HRA itself and the Constitution.  The Council thus can pass legislation whether or not it is "usual" and "reasonable" under ancient, superseded statutes granting regulatory power to the Council's defunct predecessors, like the Act of February 26, 1892, 27 Stat. 394 (1892 Act), and the Act of June 30, 1906, 34 Stat. 808 (1906 Act).  That conclusion also follows from the express purposes of the HRA and its legislative history.  The District of Columbia Court of Appeals (DCCA) thus has authoritatively ruled that the Council can enact gun laws based on the power newly conferred in the HRA, and this Court has suggested likewise.

2.  Under current precedent, the word "usual" in the 1892 and 1906 Acts has no independent weight.  Under older precedent, a law is "usual" if any other jurisdiction has or had laws covering similar subject matter.  That this analysis is permissive makes sense because such acts allowed only regulation, not legislation.  The HRA lifted that restriction by giving the Council legislative power.

The canon of constitutional avoidance is not relevant to interpretation of the 1906 Act.  That act is plainly constitutional, and the canon applies only to interpretation of a statute that itself raises constitutional questions.

3. All the challenged laws are "usual" even if the Court gives that word independent weight despite the HRA and binding precedent. Indeed, the Court already has held that the 1906 Act provides "ample warrant" for "a comprehensive scheme of control over firearms" like that in regulations that required guns to be registered. Plainly, at least some other jurisdictions have or had laws covering similar subject matter as the District's laws requiring registration and banning assault weapons and large capacity ammunition feeding devices (LCAFDs). In fact, these laws have many current and recent federal, state, and municipal analogues.

4. This Court is bound by the DCCA's resolution of local law issues. Under binding precedent, the interpretation of delegations of power to the District's local government such as those in the 1892 and 1906 Acts and the HRA is a local law question. Plaintiffs suggest that the Court need not follow the DCCA when interpreting statutes enacted by Congress itself for the District, but that is simply wrong. Such statutes are treated as local law under longstanding precedent.

## ARGUMENT

I.  **THE COUNCIL HAS POWER TO PASS GUN LAWS UNDER THE HOME RULE ACT, WHICH SUPERSEDES EARLIER LIMITS SUCH AS THOSE IN THE 1906 ACT.**

A.  **The history, text, and purposes of the Home Rule Act establish that it supersedes earlier limits on local authority over firearms.**

As its history, text, and purposes make clear, the HRA delegated general legislative power to the Council and superseded earlier, more limited delegations

of authority to the District's local government.  Congress has plenary authority to create a local government with full legislative powers.  *D.C. v. John R. Thompson Co.*, 346 U.S. 100, 109–10 (1953).  In the Act of February 21, 1871, 16 Stat. 419, it created a Legislative Assembly with "legislative power . . . extend[ing] to all rightful subjects of legislation within said District, consistent with the Constitution . . . and the [act's] provisions." *Id.* § 18.  As the Supreme Court later recognized, Congress thereby delegated legislative authority "as broad as the police power of a state." *John R. Thompson*, 346 U.S. at 110.

In 1874, Congress replaced the Legislative Assembly with a Board of Commissioners (Board). *Id.* at 105 n.4.  It lacked general legislative power, but Congress delegated it regulatory authority in discrete areas.  *Id.* at 111; *Newspapers, Inc. v. MPD*, 546 A.2d 990, 994–95 (D.C. 1988).  Of note, the 1892 Act, codified at D.C. Code § 1-303.03, "authori[zed] . . . all such reasonable and usual police regulations . . . as . . . necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District."  The 1906 Act, codified at D.C. Code § 1-303.43, "authori[zed] . . . all such usual and reasonable police regulations . . . as . . . necessary for the regulation of firearms, projectiles, explosives, or weapons of any kind in the District."

Reorganization Plan No. 3 of 1967, 81 Stat. 948, abolished the Board and divided its "functions" between a Commissioner and a District of Columbia Council

(D.C. Council).  *Id.* §§ 101–406.  Among the functions given the D.C. Council were "[m]aking regulations under" the 1892 and 1906 Acts.  *Id.* § 402(4).  Like the Board, it lacked general legislative authority.  *Id.* § 402; *Newspapers*, 546 A.2d at 997.

The HRA created the current District government in 1973.  Congress created the Council in its present form and gave it general "legislative power," not just the specified "regulatory" powers of its predecessors.  D.C. Code § 1-204.04(a).  The HRA's description of the "legislative power" Congress delegated is critical:

> Except as provided in §§ 1-206.01 to 1-206.03, the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of this chapter subject to all the restrictions and limitations imposed upon the states by the 10th section of the 1st article of the Constitution of the United States.

D.C. Code § 1-203.02.  The Council's legislative authority thus reaches "all rightful subjects of legislation" in the District "[e]xcept as provided" by the HRA itself or the Constitution.  Again, authority over "rightful subjects of legislation" is authority "as broad as the police power of a state."  *John R. Thompson*, 346 U.S. at 110.

Although the HRA set some limits on the Council's legislative authority, none tracks the earlier limits on the District's regulatory authority, and none is implicated by the gun laws at issue.  (The relevant part of the HRA is Chapter VI, "Reservation of Congressional Authority," D.C. Code §§ 1-206.01 to 1-206.04, and in particular D.C. Code § 1-206.02, "Limitations on the Council.")  Thus, the Council can enact gun laws even if they are not "usual and reasonable" under the 1906 Act.

That conclusion, moreover, is mandated by Congress's purposes and the legislative history. The HRA states that Congress intended, *inter alia*, "to delegate certain legislative powers" to the District "and, to the greatest extent possible, . . . relieve Congress of the burden of legislating upon essentially local District matters." D.C. Code § 1-201.02(a). The legislative history shows that Congress intended to change local governance by giving the Council state-like legislative authority except as otherwise specified. *HRA History*[1] 460–61, 1034–37, 1448, 1459, 1498–1503, 2724 (reprinting committee materials, H.R. Rep. No. 93-482, at 8, 19, 58–63 (1973), and S. Rep. No. 93-219, at 4 (1973)).

Plaintiffs' argument that Congress meant to apply limits on the defunct Board's regulatory authority to the Council's legislative authority is thus ahistorical and patently contrary to Congress's intent. It also requires an absurd result: taken to its logical end, the argument would mean that Congress nonsensically meant to limit the Council's legislative authority *only* in those areas where Congress had earlier thought local control appropriate. That would mean lesser local authority over not only firearms but all matters then subject to "usual" and "reasonable" regulations, including pawnbroking, "the keeping of dogs and

---

[1]     House Committee on the District of Columbia, *Home Rule for the District of Columbia 1973–1974: Background and Legislative History of H.R. 9056, H.R. 9682, and Related Bills Culminating in the District of Columbia Self-Government and Governmental Reorganization Act* (Comm. Print 1974).

fowls," and everything "necessary for the protection of lives, limbs, health, comfort, and quiet . . . and . . . property."  D.C. Code §§ 1-303.01, 1-303.03, 1-303.43.  Accepting the argument would undo the HRA in large measure by drastically reducing the Council's authority, improperly resurrecting ancient laws, and enmeshing Congress in local matters from which it had sought disengagement.

It is little surprise, then, that plaintiffs' attempt to find support in the text of the HRA is seriously flawed.  They rely primarily on § 404(a), which reads:

> Subject to the limitations specified in §§ 1-206.01 to 1-206.04, the legislative power granted to the District by this chapter is vested in and shall be exercised by the Council in accordance with this chapter.  In addition, except as otherwise provided in this chapter, all functions granted to or imposed upon, or vested in or transferred to the District of Columbia Council, as established by Reorganization Plan No. 3 of 1967, shall be carried out by the Council in accordance with the provisions of this chapter.

D.C. Code § 1-204.04(a).  Plaintiffs argue that, because the "functions" of the D.C. Council included issuing "usual and reasonable" firearms regulations, and because that function was transferred, the current Council may adopt gun laws only if they are usual and reasonable.  Plaintiffs-Appellants' Supplemental Brief (PSBr) 4–5.  This argument fails for at least five independent reasons.

*First*, plaintiffs ignore the first sentence of § 404(a), which gives the Council the broad legislative power described above.  They never explain why the second sentence should be read to limit that power.  To the contrary, the second sentence expressly speaks of functions "[i]n addition" to the power granted by the first.

*Second*, plaintiffs misread the second sentence of § 404(a). It provides that the Council shall "carr[y] out" the D.C. Council's "functions . . . in accordance with" the HRA. It establishes that the Council has the authority to regulate guns to the full extent of its authority under the HRA, not that any pre-HRA limits on the regulatory authority of the D.C. Council apply to the Council. That is made clear by reading § 404(a) with its sister provision, § 422, which decrees that "functions" of the Commissioner in the pre-HRA government would be "carried out by the [new] Mayor in accordance with [the HRA]." D.C. Code § 1-204.22. As the legislative history confirms, these provisions work together to establish which parts of the new government would carry out particular functions of the pre-HRA government. *See HRA History* 1461 (reprinting H.R. Rep. No. 93-482, at 21).

If Congress had meant to apply any pre-HRA limit on regulatory authority to the Council's legislative authority under the HRA, Congress would have said so straightforwardly and prominently rather than through the awkward reading of Section 404(a) plaintiffs propose. "Congress does not typically hide elephants in mouseholes . . . ." *In re Any & All Funds*, 613 F.3d 1122, 1130 (D.C. Cir. 2010).

*Third*, plaintiffs ignore that the 1906 Act speaks to "regulat[ory]," not legislative, power. The two are different. *Newspapers*, 546 A.2d at 996–97. The challenged gun laws came in "Acts" that amended the D.C. Code. It thus would not matter if any limit on local *regulatory* authority survived the HRA.

*Fourth*, plaintiffs presume that the 1906 Act is a limitation on authority, but the statute by its terms is a delegation of authority. The presumption against implied repeal is irrelevant because two sources of authority can "readily co-exist." *Morton v. Mancari*, 417 U.S. 535, 550 (1974); *Envtl. Def. Fund v. EPA*, 598 F.2d 62, 76–77 (D.C. Cir. 1978). Nor, in any event, did the HRA nullify the 1906 Act. Again, the law served a purpose in the HRA: it made plain that this "function" of the D.C. Council — regulating firearms — resided at least initially with the new Council. And even if the HRA had impliedly repealed or rendered the ancient statute surplusage, the Court's duty would still be to read the HRA as Congress plainly intended.[2] The relevant HRA provision begins: "Except as provided in §§ 1-206.01 to 1-206.03, the legislative power . . . shall extend to all rightful subjects of legislation . . . ." D.C. Code § 1-203.02. Limits on the regulatory power of the pre-HRA D.C. Council thus do not apply to the legislative power of the Council.

*Fifth*, even if the 1906 Act were a limit on the D.C. Council that transferred to the Council when the HRA was enacted, the HRA authorized the Council to

---

[2]    *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004) ("[O]ur preference for avoiding surplusage constructions is not absolute."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual . . . , and so long as there is no 'positive repugnancy' . . . , a court must give effect to both." (citation omitted)); *Sabre, Inc. v. DOT*, 429 F.3d 1113, 1122 (D.C. Cir. 2005) ("Legislative drafters often use apparently redundant language . . . to emphasize that a broad delegation may not [be] evaded . . . ."); *Fulton v. D.C.*, 2 App. D.C. 431, 438 (1894) ("[W]hen the later act covers the whole subject of a former one, especially when the later act contains new provisions, [it] will be construed to repeal the former.").

amend that statute and, thus, to enact gun laws even if they are not "usual" and "reasonable." Although plaintiffs curiously rely on § 717(b), that subsection indicates that laws that predate the HRA "may be amended or repealed by act or resolution as authorized in" the HRA. D.C. Code § 1-207.17(b). Plaintiffs say without explanation that amending the 1906 Act is not authorized in the HRA (PSBr5) but D.C. Code §§ 1-203.02 and 1-204.04(a) provide the Council authority to amend pre-existing statutes unless a specific limitation applies. None does. The HRA forbids the Council to "amend or repeal any Act of Congress" that "is not restricted in its application exclusively in or to the District." D.C. Code § 1-206.02(a)(3). The HRA thus contemplates that the Council after the HRA may amend laws enacted for the District by Congress, such as the 1892 and 1906 Acts.[3]

Plaintiffs hyperbolically say their reading of the HRA avoids "open[ing] a Pandora's box that would throw into doubt all existing jurisprudence." PSBr8. In fact, their radical position would overturn almost forty years of practice, flout common understandings regarding the nature of the District's government, and

---

[3]     *See HRA History* 1035–37; *Railco Multi-Constr. Co. v. Gardner*, 902 F.2d 71, 73 (D.C. Cir. 1990); *Hall v. C&P Tel. Co.*, 793 F.2d 1354, 1359 (D.C. Cir. 1986). Although § 714(a) of the HRA indicates that statutes that referred to the pre-HRA Board or D.C. Council regarding a function that was transferred to the post-HRA Council would remain in force and be taken to refer to the new Council, D.C. Code § 1-207.14(a), that was only for the sake of continuity in government. *HRA History* 1479, 2733 (reprinting H.R. Rep. No. 93-482, at 39, and S. Rep. No. 93-219, at 13); *see Utz v. Cullinane*, 520 F.2d 467, 483 n.45 (D.C. Cir. 1975). The Council can amend such pre-existing statutes pursuant to its HRA authority.

undermine an untold number of existing and future Council acts, in conflict with the clear purpose and meaning of the *Home Rule* Act.

**B.      Precedent supports the Council's authority here.**

Plaintiffs are also quite wrong to say that precedent supports their argument. PSBr6–8.  DCCA precedent is squarely against them.  *McIntosh v. Washington*, 395 A.2d 744 (D.C. 1978), held that the Firearms Control Regulations Act of 1975 (which the Council amended in the Firearms Registration Amendment Act of 2008) could "be sustained under the Council's newly conferred power . . . in [D.C. Code § 1-204.04(a)]" in the HRA.  *Id.* at 751 & n.13.  Although plaintiffs quote a footnote in *McIntosh* to assert that the Council chose to rely only on the 1906 Act (PSBr6), that is wrong for the reasons in the District's brief (at 58–59).  Thus, based on a straightforward reading of *McIntosh*, the district court has rejected plaintiffs' argument summarily.  *Seegars v. Ashcroft*, 297 F. Supp. 2d 201, 215 n.12 (D.D.C. 2004), *aff'd in part, rev'd in part*, 396 F.3d 1248 (D.C. Cir. 2005).[4]

Even if *McIntosh* were not clear enough, the DCCA has continued to recognize the breadth of the legislative power granted by the HRA in a manner inconsistent with plaintiffs' argument.  In 1981, sitting *en banc*, that court held:

---

[4]      Although the DCCA also considered the Council's authority under the 1906 Act, it did so because the 1975 law was enacted during the effective period of an HRA provision that temporarily barred the Council from amending certain titles of the D.C. Code.  *McIntosh*, 395 A.2d at 749–50; D.C. Code § 1-206.02(a)(9).  After this moratorium ended, these titles were subject to the Council's full HRA power.

"Although subject to congressional review, the Council's powers of ordinary legislation are broad; they are limited only by specified exceptions and by the general requirement that legislation be consistent with the U.S. Constitution and the Home Rule Act." *Convention Ctr. Referendum Comm. v. D.C. Bd. of Elections & Ethics*, 441 A.2d 889, 903 (D.C. 1981) (*en banc*). The court has indicated likewise many other times, including in another *en banc* decision this past July.[5]

This Court similarly has recognized that Congress in the HRA "granted to the D.C. government certain legislative powers coextensive with those of the states." *Spivey v. Barry*, 665 F.2d 1222, 1225 n.4 (D.C. Cir. 1981). The HRA "delegates to the [Council] 'legislative power' over 'all rightful subjects of legislation.' The Act then lists certain matters that are not rightful subjects . . . ." *Marijuana Policy Project v. U.S.*, 304 F.3d 82, 84 (D.C. Cir. 2002) (citation omitted); *see Bliley v. Kelly*, 23 F.3d 507, 508 (D.C. Cir. 1994). These statements belie plaintiffs' view that the Council's power has limits not specified in the HRA.

Plaintiffs fail to discuss these cases and instead rely on inapposite precedent. The sole DCCA case they cite on this point addresses whether a regulation issued by an executive agency was consistent with the underlying statute. *Reynolds v.*

---

[5]    *E.g.*, *Jackson v. D.C. Bd. of Elections & Ethics*, 999 A.2d 89, 94–95 & n.5, 100–01 (D.C. 2010) (*en banc*); *Sprint Commc'ns v. Kelly*, 642 A.2d 106, 112–13 (D.C. 1994); *Atchison v. D.C.*, 585 A.2d 150, 154–55 (D.C. 1991); *D.C. v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 405–06 (D.C. 1989); *D.C. v. Greater Wash. Cent. Labor Council*, 442 A.2d 110, 113–14 (D.C. 1982).

*D.C.*, 614 A.2d 1285, 1285, 1287–90 (D.C. 1992). That decision affirms that the Council *would* have had authority to legislate: "its right to do so is virtually immune from challenge, barring constitutional considerations." *Id.* at 1289.

From this Court, plaintiffs cite three cases that predate the HRA and so naturally do not speak to the HRA's effect. *Firemen's Ins. v. Washington*, 483 F.2d 1323 (D.C. Cir. 1973); *Md. & D.C. Rifle & Pistol Ass'n v. Washington*, 442 F.2d 123 (D.C. Cir. 1971); *Fulton*, *supra*. The two other cases they cite suggest no limits on the Council's authority to legislate. *Christian Knights of the Ku Klux Klan Invisible Empire v. D.C.*, 919 F.2d 148 (D.C. Cir. 1990); *Green v. D.C.*, 710 F.2d 876 (D.C. Cir. 1983). Tellingly, plaintiffs cite no instance in which either the DCCA or this Court has even hinted that limits on the regulatory authority of the Council's predecessors apply to the Council's legislative authority under the HRA. That is because that position has no merit.

## II.   A LAW IS "USUAL" UNDER THE 1906 ACT WHEN THE LAW IS OF A TYPE FOUND IN ANY OTHER JURISDICTION.

### A.   Under current precedent, the word "usual" has no independent effect and, under older precedent, a law is "usual" if any other jurisdiction has or had laws covering similar subject matter.

Current precedent in both the DCCA and this Court gives no analytical weight to the word "usual" in statutes like the 1906 Act. This Court in *Firemen's Insurance* read an earlier DCCA decision to "define[] the scope of the power conferred on the local government" by the 1892 Act to be "primarily functional in character: such

regulations must be 'necessary for the protection of the lives, limbs, health, comfort and quiet of . . . persons and the protection of . . . property within the District of Columbia. . . .' If they meet that test they must be upheld." 483 F.2d at 1327 (quoting *Filippo v. Real Estate Comm'n*, 223 A.2d 268, 273 (D.C. 1966)). The Court thus upheld a regulation without deciding whether it was "usual." *Id.* at 1327–28. The DCCA has done similarly in later cases (and this Court in earlier cases).[6] This approach also accords with prevailing law regarding general delegations of police power. *See* 6A Eugene McQuillin, *The Law of Municipal Corporations* §§ 24:44–48 (3d ed. 2007). There is no reason to distinguish the 1892 and 1906 Acts in this regard; indeed, plaintiffs themselves cite cases dealing with the two interchangeably.

Some older decisions in both courts have given independent weight to the word "usual," but even then have made clear that this hurdle is very low. In *Filippo*, a pre-HRA decision, the court found "usual" a regulation barring racial discrimination in real estate transactions because a single other city barred racial discrimination in public restaurants. 223 A.2d at 273–74. That approach accords with this Court's recognition of Congress's intent in such "comprehensive" delegations of authority: "Congress intended . . . to increase the powers of the [Board] to the full extent of those frequently, if not generally, entrusted to municipal

---

[6]     *E.g.*, *McIntosh*, 395 A.2d at 752; *Newsweek Magazine v. D.C. Comm'n on Human Rights*, 376 A.2d 777, 782 (D.C. 1977); *Taylor v. D.C.*, 24 App. D.C. 392, 398–401 (1904); *Callan v. D.C.*, 16 App. D.C. 271, 274–77 (1900).

corporations." *B. & O. R.R. Co. v. D.C.*, 10 App. D.C. 111, 126 (1897). As plaintiffs further concede, this Court looks not only to what municipalities do, but also to "state and federal law." PSBr10; *see Firemen's Ins.*, 483 F.2d at 1327–28.

A law is thus "usual" under relevant statutes at least if any other jurisdiction has or had laws that address similar subject matter — or, indeed, if it is of the type that one could expect in another jurisdiction. The inquiry does not depend, as plaintiffs suggest based on inapposite Eighth Amendment precedent, on how many other jurisdictions have precisely the same law at the time. PSBr9–10. After all, Congress would not have wanted a delegation of authority to depend on such vagaries but rather on "a bright line easily ascertained." *See Fed. Power Comm'n v. S. Cal. Edison Co.*, 376 U.S. 205, 215–16 (1964).[7]

Although the word "usual" restricted the Board's authority only minimally, that makes sense. The main restriction came from the fact that "it is regulation, not legislation, that [was] authorized." *Coughlin v. D.C.*, 25 App. D.C. 251, 254 (1905). Of course, the HRA later gave the Council broad legislative authority.

_____

[7]     Plaintiffs cite no case in which either court has found a regulation not to be "usual" where any other jurisdiction has addressed similar subject matter. The closest they come is *Crane v. D.C.*, 289 F. 557 (D.C. Cir. 1923), but that case dealt with a "regulation . . . broad enough to make every newsboy selling newspapers on the street a law breaker and to subject to arrest and punishment any person if he sell a pencil, a harmless toy, or knicknack while moving along the street, annoying nobody and endangering the life, limb, or health of no one," and had no discussion of other jurisdictions' laws. *Id.* at 561. *Fulton*, meanwhile, invalidated a regulation because it was unreasonable, not because it was unusual. 2 App. D.C. at 438–39.

**B.    The canon of constitutional avoidance is not relevant.**

Plaintiffs say that the 1906 Act should be interpreted in light of concerns

with statutes enacted in 1975 and 2008, but the canon of constitutional avoidance

does not work that way.  It is "a means of giving effect to congressional intent, not

of subverting it."  *Clark v. Martinez*, 543 U.S. 371, 382 (2005).  It applies to a

statute that could be interpreted in different ways because of the "presumption that

Congress did not intend the alternative which raises serious constitutional doubts."

*Id.* at 381.  It thus does not apply to a statutory delegation of authority that, like the

1906 Act (and the HRA), is itself plainly constitutional.  *See John R. Thompson*,

346 U.S. at 106–10.  Indeed, for similar reasons, the Supreme Court has already

refused to apply the canon to a delegation of authority to a federal executive

agency.  *FCC v. Fox Television Stations*, 129 S. Ct. 1800, 1811–12 (2009).

Plaintiffs have no support for their contrary view.  They cite *Fulton*, but the

Court there saw no need to rule on whether a regulation was constitutional because

it exceeded statutory authority.  2 App. D.C. at 438.  The Court did not construe

the underlying statute based on constitutional concerns with the regulation.

**III.    THESE GUN LAWS ARE "USUAL" UNDER THE 1906 ACT.**

The challenged gun laws are "usual" under the 1906 Act (and the 1892 Act)

even if this Court gives the word independent weight.  The Court already has held

that the statute provides "ample warrant" for "a comprehensive scheme of control

over firearms" like that in the regulations (replaced by the 1975 act) that required guns to be registered. *Maryland & D.C. Rifle Ass'n*, 442 F.2d at 125–26 & n.9. Persuaded by that decision, the DCCA has agreed. *McIntosh*, 395 A.2d at 752.

Moreover, the District's registration system would be "usual" even if this Court could set this binding precedent aside. Seven states and several major cities, with more than a quarter of the nation's population under recent Census figures, require registration of some or all firearms.[8] Plaintiffs' assertion (PSBR16) that only one state requires registration of all guns, and that its system differs from the District's in some ways, is irrelevant under the highly permissive analysis required by cases like *Filippo*. Indeed, it suffices that comparable laws requiring licenses to purchase and to carry guns are common. *LCAV Survey* 177–87, 203–14.

Further, again, what municipalities have historically done is also relevant. As plaintiffs indicate, many states currently preempt local jurisdictions' authority to regulate firearms. PSBr14 & n.16. Nonetheless, under the common understanding of municipal authority, "a municipality may require the registration of firearms." 7A McQuillin, *supra*, § 24.489 (citing cases at notes 7 and 19). *Amici* professional

---

[8]     Statutory Addendum (SA) 163; Legal Community Against Violence, *Regulating Guns in America* (*LCAV Survey*) 190–95 (2008 ed.), http://www.lcav. org/publications-briefs/reports_analyses/RegGuns.entire.report.pdf (citing laws from California, Connecticut, Hawaii, Louisiana, Maryland, Michigan, New Jersey, Chicago, Cleveland, New York City, and Omaha). One cited statute was repealed but a similar one remains. Mich. Comp. Laws § 28.422(5). Las Vegas also has a registration system. Clark County, Nev., Mun. Code §§ 12.04.110, .200.

historians and law professors have also detailed (at 3–12) historical analogues to the District's current registration system. The registration law is thus "usual."

So are the bans on assault weapons and LCAFDs. As these same *amici* explain (at 12–24), states and cities have long been understood as authorized to ban weapons that are particularly dangerous in their own jurisdictions. Moreover, these specific bans on assault weapons and LCAFDs have numerous present and recent analogues in other jurisdictions. In 1994, "[b]ased on the grave dangers posed by such weapons before prior federal and state laws could be enforced," Congress prohibited the manufacture and sale of new assault weapons for a decade. *Navegar, Inc. v. U.S.*, 192 F.3d 1050, 1052 (D.C. Cir. 1999); *see* 18 U.S.C. 921(a)(30), 922(v) (2000). In the same act, Congress also banned LCAFDs. 18 U.S.C. 921(a)(31), 922(w) (2000). Even before then, the Bureau of Alcohol, Tobacco and Firearms banned importation of guns that were assault weapons under the federal and District definitions, with this Court's approval. *See Springfield, Inc. v. Buckles*, 292 F.3d 813, 815–20 (D.C. Cir. 2002). Ten states and many cities, making up about one-third of the nation's population, ban or regulate assault weapons, and many ban or restrict high-capacity magazines.[9] Again, that these laws differ in some particulars (PSBr17–19) is of no moment.

---

[9]     SA168; *LCAV Survey* 20–27 (citing assault weapons laws from California, Connecticut, Hawaii, Maryland, Massachusetts, Minnesota, New Jersey, New

Nor does it matter if the District's gun laws are the strictest in the nation. PSBr13–14. As an initial matter, plaintiffs do not challenge the District's gun laws as a whole, only specific provisions that have many current and historical analogues. Moreover, as discussed, it does not matter how municipalities today have chosen based on local conditions to exercise their powers, or if states have preempted them from doing so. Finally, to the extent plaintiffs suggest (PSBr14) that what other jurisdictions choose to do is relevant to the Second Amendment analysis, that is also incorrect. Statutes, of course, do not define the scope of such constitutional rights. *Cf. Virginia v. Moore*, 553 U.S. 164, 171–76 (2008) (Fourth Amendment).

## IV.    THIS COURT IS BOUND BY DCCA DECISIONS ON LOCAL LAW ISSUES SUCH AS THE SCOPE OF THE COUNCIL'S AUTHORITY.

This Court is "bound by the law of the District . . . , as authoritatively interpreted by the [DCCA]." *Hall v. Ford*, 856 F.2d 255, 267 (D.C. Cir. 1988). The Court "defer[s] to the local courts' interpretations of the D.C. Code in the same manner that other federal courts defer to state court interpretations of state law." *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003).

---

York, Virginia, Boston, Chicago, Cleveland, Columbus, and New York City); *id.* at 29–32 (citing high-capacity magazine laws from California, Hawaii, Maryland, Massachusetts, New Jersey, New York, Boston, Chicago, Columbus, Los Angeles, and New York City); Appellees' Brief 27 (citing state cases upholding assault weapons and high-capacity magazine bans).

Plaintiffs mistakenly suggest that laws enacted by Congress are never local laws. PSBr20. The Supreme Court and this Court have repeatedly ruled, however, that laws enacted by Congress exclusively for the District are local law in considering the deference due the District's local courts.[10] Indeed, "[l]aws passed by Congress that are applicable exclusively to the District of Columbia are not federal law for jurisdictional purposes, see 28 U.S.C. §§ 1331, 1366, so any claims based on such laws are necessarily local." *Decatur Liquors v. D.C.*, 478 F.3d 360, 362–63 (D.C. Cir. 2007); *see also* 28 U.S.C. 1257, 1343; D.C. Code § 11-102.

In particular, under binding precedent, the question of how to interpret Congress's delegations of authority to a local legislature is a local law question. In *Dimond v. D.C.*, 792 F.2d 179 (D.C. Cir. 1986), the Court addressed the limits on the Council's authority in the HRA and, because these "would appear to apply exclusively to the District," found that no federal question was presented in the case. *Id.* at 188. And in *Firemen's Insurance*, the Court unequivocally accepted the DCCA's interpretation of the 1892 Act. 483 F.2d at 1327.

To be sure, the HRA contains provisions that are "exclusively federal," regarding which the Court need not defer. *Bliley*, 23 F.3d at 511. Thus, in *Bliley*, it departed from the DCCA's reading of the HRA regarding "Congress's reserved

---

[10] *E.g.*, *Pernell v. Southall Realty*, 416 U.S. 363, 367 (1974); *U.S. v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991); *Am. Sec. & Trust Co. v. Rudolph*, 38 App. D.C. 32, 45–46 (D.C. Cir. 1912).

right to review District legislation before it becomes law." *Id.* That right comes into play only after the role of the Council and the Mayor in the process has ended, so this question is indeed "exclusively federal." *See* D.C. Code § 1-206.02(c). Questions regarding the scope of the Council's authority are plainly not exclusively federal; to the contrary, as *Dimond* indicates, they are purely local. Indeed, in *Bliley* itself, the Court agreed that the DCCA's resolution of an HRA issue on "the effect of legislative action by the [Council] dealing with matters within its jurisdiction" was "binding on this court." 23 F.3d at 511; *see Decatur Liquors*, 478 F.3d at 133 (two-readings requirement in HRA is local law).

Further, the Court later read *Bliley* narrowly in holding that whether the Council could use "implied repeals to circumvent the congressional review procedures" in the HRA presented only a local law question on which this Court "would be bound by [the DCCA's] holding." *Noble v. U.S. Parole Comm'n*, 82 F.3d 1108, 1112–13 (D.C. Cir. 1996). Noting that "[f]ederal court review, not by this court, but by the Supreme Court, remains available to correct any legal error," this Court thus certified a question to the DCCA. *Id.* To avoid a conflict with the DCCA that could require resolution by the Supreme Court, this Court should do likewise here if it has any doubt that plaintiffs' local-law claim is meritless.

## CONCLUSION

The Court should affirm the judgment of the district court.

Respectfully submitted,

IRVIN B. NATHAN
Acting Attorney General for the District of
Columbia

/s/ Todd S. Kim
TODD S. KIM
Solicitor General

DONNA M. MURASKY
Deputy Solicitor General

Office of the Attorney General
441 4th Street, N.W., 6th Floor South
Washington, D.C.  20001
(202) 724-6609

## CERTIFICATE OF SERVICE

I certify that on January 12, 2011, electronic copies of this supplemental

brief were served through the Court's ECF system and paper copies were mailed

by first-class mail, postage prepaid, to:

Stephen P. Halbrook                     Matthew Shors
Richard E. Gardiner                     O'Melveny & Myers LLP
3925 Chain Bridge Road                  1625 Eye Street, NW
Suite 403                               Washington, DC 20006-4001
Fairfax, VA 22030

William J. Olson                        Paul R.Q. Wolfson
370 Maple Avenue West                   Wilmer Cutler Pickering Hale and Dorr LLP
Suite 4                                 1875 Pennsylvania Avenue, NW
Vienna, VA 22180-5615                   Washington, DC 20006

Elizabeth Trosman
Chrisellen R. Kolb
Peter S. Smith
Assistant United States Attorneys.
555 Fourth Street, NW, Room 8104
Washington, DC 20530

                              /s/ Todd S. Kim
                              TODD S. KIM