**ORAL ARGUMENT HELD ON NOVEMBER 15, 2010**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

10-7036

---

**DICK ANTHONY HELLER, ABSALOM JORDAN,
WILLIAM CARTER, and MARK SNYDER**

Appellants

v.

**THE DISTRICT OF COLUMBIA and
VINCENT C. GRAY, Mayor, District of Columbia**,

Appellees

---

**REPLY SUPPLEMENTAL BRIEF FOR APPELLANTS**

---

Appeal from the U.S. District Court
for the District of Columbia
District Ct. Civil No. 1:08-cv-01289 (RMU)

Stephen P. Halbrook
Richard E. Gardiner
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
(703) 352-7276

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I. THE HOME RULE ACT INCORPORATES
       D.C. CODE § 1-303.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II. "USUAL" MEANS ORDINARY, NOT
        THAT JUST ISOLATED INSTANCES
        CAN BE FOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III. THE DISTRICT'S LAWS ARE NOT "USUAL" . . . . . . . . . . . . . . . . . 7

    IV. THIS COURT IS NOT BOUND BY
        DCCA DECISIONS WHERE A
        LAW'S INTERPRETATION RAISES
        CONSTITUTIONAL ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES[*]

**CASES**                                                                 **Page**

*City of Cleveland v. State*,
No. 2009-2280, 2010 WL 5392919 (Ohio Dec. 29, 2010) .................. 9

*District of Columbia v. John R. Thompson Co., Inc.*,
346 U.S. 100 (1953) ........................................... 2, 4

*Filippo v. Real Estate Comm'n of D.C.*,
223 A.2d 268 (D.C. 1966) ......................................... 6

*Firemen's Ins. Co. of Washington, D.C. v. Washington*,
483 F.2d 1323 (D.C. Cir. 1973) ..................................... 6

*Fulton v. D.C.*,
2 App. D.C. 431 (D.C. Cir. 1894) ................................... 6

*Hall v. C&P Tel. Co.*,
793 F.2d 1354 (D.C. Cir. 1986) ..................................... 9

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) .............................................. 5

*Lyng v. Northwest Indian Cemetery Protective Assn.*,
485 U.S. 439 (1988) .............................................. 7

*Marijuana Policy Project v. U.S.*,
304 F.3d 82 (D.C. Cir. 2002) ....................................... 2

**Maryland & D.C. Rifle & Pistol Ass'n, Inc. v. Washington*,
442 F.2d 123 (D.C. Cir. 1971) ...................................... 4

---

[*]Authorities chiefly relied upon are marked with asterisks.

*McIntosh v. Washington*,
395 A.2d 744 (D.C. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 5, 6, 9

*Newspapers, Inc. v. Metropolitan Police Department,*
546 A.2d 990 (D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pernell v. Southall Realty*,
416 U.S. 363 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Utz v. Cullinane*,
520 F.2d 467 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Whalen v. United States*,
445 U.S. 684 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## D.C. CODE

D.C. Code § 1-201.02(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5

D.C. Code § 1-203.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.C. Code § 1-204.04(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

D.C. Code § 1-206.02(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.C. Code § 1-206.02(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.C. Code § 1-207.14(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.C. Code § 1-207.17(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

D.C. Code § 1-303.43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 5, 7, 10

D.C. Code § 11-723 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.C. Code § 22-4504(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE STATUTES**

M.C.L. § 28.422(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Minn. Stat. § 624.713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Va. Code §§ 18.2-287.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# GLOSSARY

| | |
|---|---|
| 1906 Act | Act of June 30, 1906, Pub. L. No. 59-401 |
| DC Supp. | Appellees's Supplemental Brief |
| DCCA | District of Columbia Court of Appeals |
| Heller Supp. | Appellants' Supplemental Brief |
| HRA | Home Rule Act |

## SUMMARY OF ARGUMENT

To be a "rightful subject of legislation" under the Home Rule Act ("HRA"), an act must be consistent with provisions of law passed by Congress. The vesting of the legislative power in the Council, D.C. Code § 1-204.04(a), does not define that power, but it includes functions transferred to the prior D.C. Council, including § 1-303.43. *McIntosh v. Washington*, 395 A.2d 744, 750 n.11 (D.C. 1978). *McIntosh* did not suggest that the HRA rendered that provision nugatory.

The existence of laws on a subject somewhere else, without regard to their content or whether they are ordinary, does not make a District law "usual." This Court may avoid the Second Amendment issue here by reading "usual" in its ordinary meaning and voiding the challenged ordinance.

The District's laws here are "the strictest in the nation." Only a single state requires registration of all firearms, which does not expire. The law of only one other city compares with that of the District in its severity. The few states that regulate "assault weapons" and magazines holding more than ten rounds include registration or licencing for lawful possession. None are absolute bans like the District's.

The deference accorded the interpretations of local law by the D.C. Court of Appeals does not apply where, as here, the law is an act of Congress which confers and limits authority, and the construction of which raises significant constitutional

1

issues. But the argument that the District may enact unusual and unreasonable firearm regulations is foreclosed by the decision of that court in *McIntosh*.

## ARGUMENT

### I. THE HOME RULE ACT INCORPORATES D.C. CODE § 1-303.43

The HRA provides: "Subject to the retention by Congress of the ultimate legislative authority over the nations' capital . . ., the intent of Congress is to delegate *certain legislative powers* to the government of the District of Columbia . . . ." D.C. Code § 1-201.02(a)(emphasis added). Accordingly, "the legislative power of the District shall extend to all rightful subjects of legislation . . . consistent with the Constitution . . . and the provisions of this Act . . . ." D.C. Code § 1-203.02.

To be a "rightful subject of legislation," a law must be consistent with Acts of Congress.[1] Section 1-303.43 is one such Act, and it is not an "absurd result," DC Supp. 5, that firearm regulations must continue to be usual and reasonable.

The District argues that the HRA "superceded earlier, more limited delegations

---

[1] Similar language was used in the enabling act construed in *D.C. v. John R. Thompson Co., Inc.*, 346 U.S. 100, 108-09 (1953), which analogized Congress' delegation of power to the District with delegation by states to cities of home rule powers, which "may be restricted by terms of the grant . . . ." *Id*. at 108-09. It did not state that the delegation was, in every way, "as broad as the police power of a state." DC Supp. 3-4. The HRA "delegated some, but not all," of Congress' legislative authority over D.C. to the Council. *Marijuana Policy Project v. U.S.*, 304 F.3d 82, 84 (D.C. Cir. 2002) ("rightful subjects of legislation" exclude non-delegated powers).

2

of authority to the District's local government." DC Supp. 2-3. This flies in the face of D.C. Code § 1-204.04(a), which provides that "all functions granted to . . . or transferred to" the previous Council "shall be carried out by the Council in accordance with the provisions of this chapter."[2] Thus, rather than superceding earlier delegations, the HRA incorporated them.

The District offers the following five arguments why the "functions" so transferred did not continue to require the Council to adhere to § 1-303.43's requirement that gun regulations to be usual and reasonable. DC Supp. 6-9.

1. The District suggests that the first sentence of § 1-204.04(a) "gives the Council the broad legislative power described above," but it simply provides what entity may exercise the legislative power without defining its scope. The opening of the second sentence with "[i]n addition" followed by its statement that the "functions" of the old Council "shall be carried out by" the new Council does not imply that those functions have been repealed. That would render the second sentence superfluous.

2. Since the second sentence states that the new Council shall carry out the functions of the old Council "in accordance with the provisions of this chapter," the

---

[2] "Any statute . . . from which any function is transferred by this chapter shall . . . continue in effect as if such transfer had not been made . . . ." D.C. Code § 1-207.14(a). See *Utz v. Cullinane*, 520 F.2d 467, 483 n.45 (D.C. Cir. 1975) (a law "which was nowhere modified in the Act, continued as a valid statute").

District claims that it is not bound by the limits of those functions, as the HRA granted unlimited authority to legislate. DC Supp. 7. But that begs the question of the extent of HRA authority, and again leaves the second sentence with no meaning.

3. The District argues that § 1-303.43 speaks only to "regulatory," not legislative, power. DC Supp. 7. However, it authorizes "the Council" – not an agency – to regulate, and was held to be the source of the old and the new Council's authority to regulate firearms.[3] *McIntosh v. Washington*, 395 A.2d 744, 750 n.11 (D.C. 1978); *Maryland & D.C. Rifle & Pistol Ass'n, Inc. v. Washington*, 442 F.2d 123, 125-26 (D.C. Cir. 1971).

4. The District avers that the 1906 Act is a "delegation," not a "limitation," of authority. DC Supp. 8. It is both. The District concedes that the 1906 Act "served a purpose in the HRA: it made plain that this 'function' of the D.C. Council – regulating firearms – resided at least initially with the new Council." *Id*. Yet § 1-204.04(a) says nothing about transferred functions being only "initially" valid.[4]

---

[3]*John R. Thompson Co.*, 346 U.S. at 111-12, stated explicitly that the "anti-discrimination *laws*" at issue "are '*police regulations*.'" (Emphasis added.) *See Newspapers, Inc. v. Metropolitan Police Department,* 546 A.2d 990, 996 (D.C. 1988) ("legislative authority" of Commissioners was "limited to the enactment of 'reasonable and usual police regulations.'").

[4]The District ignores that repeals by implication are disfavored and specific clauses prevail over general clauses. See Heller Supp. 5-6; DC Supp. 8 n.2. The rule against avoiding surplusage constructions may be offset if words are "inadvertently

4

5. The District suggests that, even if § 1-303.43 applied when the HRA was enacted, the Council could repeal it and then enact unusual and unreasonable gun laws. DC Supp. 8-9. But it has not been repealed. A pre-HRA law may be amended "as authorized in this chapter," D.C. Code § 1-207.17(b), but the District has cited nothing authorizing it to repeal § 1-303.43,[5] or explaining why Congress intended the HRA to authorize enactment of unusual and unreasonable firearm regulations.

The District warns that accepting plaintiffs' arguments "would undo the HRA in large measure by drastically reducing the Council's authority," DC Supp. 6, but the Council has assumed that it is subject to the acts requiring "usual and reasonable" regulations. Section 1-303.43 (codified then as § 1-227) was "the section on which the Council relied for its authority to enact the Firearms Act." *McIntosh*, 395 A.2d at 750 n.11 (citing Council report);[6] see DC Supp. 10.

---

inserted or if repugnant to the rest of the statute." *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004). Neither factor exists here.

[5] "The Council shall have no authority to pass any act contrary to the provisions of this chapter except as specifically provided in this chapter . . . ." D.C. Code § 1-206.02(a). Section 1-206.02(a)(3) is not pertinent here. DC Supp. 9 n.3.

[6] "D.C. Code 1973, § 1-227 is not inconsistent with the Home Rule Act, and it is clear that legislative power transferred from the predecessor Council to the new Council necessarily included the function of enacting police regulations pursuant to D.C. Code 1973, § 1-226 and gun control measures pursuant to D.C. Code 1973, § 1-227." *McIntosh* at 751.

5

The discussion in *McIntosh* of § 1-204.04(a), which vested the Council with legislative functions granted to its predecessor Council, related to whether the new gun law violated § 1-206.02(a)(9), which prohibited any enactment relating to the criminal code for two years. 395 A.2d at 751 & n.13. This was the context for its statement that "the validity of the Firearms Act can be sustained under the Council's newly conferred power set forth in [§ 1-204.04(a)] of the Home Rule Act notwithstanding the limitation on such power contained in [§ 1-206.02(a)(9)]." *Id*. at 751. Read in context, this did not render then § 1-227 without effect.

## II. "USUAL" MEANS ORDINARY, NOT THAT JUST ISOLATED INSTANCES CAN BE FOUND

Doing violence to plain English, the District claims that "usual" (which it says is no longer required) meant that "any other jurisdiction has or had laws covering similar subject matter." DC Supp. 13-14. But *Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1327-28 (D.C. Cir. 1973), applied the "usual" requirement and found the regulation to be "commonly exercised by states." *Filippo v. Real Estate Comm'n of D.C.*, 223 A.2d 268, 273-74 (D.C. 1966), did not remotely suggest that "usual" meant only that "a single other city" had the law in question, and instead cited diverse legal sources reflecting various jurisdictions.[7]

---

[7]Contrary to DC Supp. 14 n.7, *Fulton v. D.C.*, 2 App. D.C. 431, 438 (D.C. Cir. 1894), did find "nothing to show that the provision is a usual one . . . ."

6

The District argues that "usual" should not be given its ordinary meaning because "Congress would not have wanted a delegation of authority to depend on such vagaries" as the existence of state laws. DC Supp. 14. On the contrary, as the federal city, Congress wanted the District to reflect the view of the national majority.

This Court may avoid the Second Amendment issue by reading "usual" in § 1-303.43 by its ordinary meaning and voiding the challenged ordinance. The District fails to articulate why constitutional avoidance here is improper. DC Supp. 15. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 445 (1988).

### III. THE DISTRICT'S LAWS ARE NOT "USUAL"

The District would rob the term "usual" of any meaning: "Nor does it matter if the District's gun laws are the strictest in the nation." DC Supp. 18. It assumes a level of generality where comparisons mean nothing – if other jurisdictions regulate any guns in any way, they are in the same class with the District, as it also regulates guns, albeit all of them in every conceivable way.

The District lists seven states and five cities allegedly composing a quarter of the U.S. population that "require registration of some or all firearms." DC Supp. 16. Of those states, only Hawaii registers all firearms, and they do not expire; Louisiana

7

only registers machine guns; California only registers handgun *transfers*; Connecticut and New Jersey only register "assault weapons"; and Maryland only registers "assault pistols." Of the listed cities, only Chicago compares in its severity with the District. See Heller Supp. 15-16.

The District argues that "it suffices that comparable laws requiring licenses to purchase and to carry guns are common." DC Supp. 6. For instance, while Michigan requires a license to obtain a pistol, the license allows one to carry the pistol. M.C.L. § 28.422(6). But that only suggests that it may be "usual" to require a license to carry a pistol,[8] not that registration of all firearms possessed in the home is "usual."

The District claims that ten states (only nine are listed) and some cities, composing a third of the U.S. population, have laws like the District's banning "assault weapons" and magazines holding over ten rounds. DC Supp. 17. Seven states with restrictions do not define the term nearly as broadly and allow possession of such items if registered or licensed, or if manufactured before 1994. See Heller Supp. 18. Two of the listed states, Minnesota and Virginia, do not restrict possession of such items by law-abiding adults at all.[9]

---

[8] The District provides no such license and completely bans the carrying of any gun outside the home. D.C. Code § 22-4504(a).

[9] *See* Minn. Stat. § 624.713 (restricting only persons with legal disabilities); Va. Code § 18.2-287.4 (limited regulation of carrying loaded in public). Of the five cities

8

The bottom line is that *zero percent of the U.S. population* live in states with prohibitions like or as stringent as the District's. With only a handful of cities with provisions even on the subject, broadly defined, the District's restrictions are anything but "usual."

### IV. THIS COURT IS NOT BOUND BY DCCA DECISIONS WHERE A LAW'S INTERPRETATION RAISES CONSTITUTIONAL ISSUES

The deference accorded the interpretations of local law by the D.C. Court of Appeals (DCCA), DC Supp. 18-20, does not apply where, as here, the law is an act of Congress which confers and limits authority, and the construction of which raises significant constitutional issues. In any case, the argument that the District may enact unusual and unreasonable firearm regulations, which raises Second Amendment issues, is foreclosed by the decision of the DCCA in *McIntosh*.[10]

"[W]here resolution of a constitutional issue could not be separated from resolution of a question of statutory construction the Court would refuse to defer to the view of the District of Columbia Court of Appeals." *Hall v. C&P Tel. Co.*, 793 F.2d 1354, 1358 n.9 (D.C. Cir. 1986), citing *Whalen v. United States*, 445 U.S. 684,

---

cited by the District, the two in Ohio are preempted by state law and void. *City of Cleveland v. State*, No. 2009-2280, 2010 WL 5392919 (Ohio Dec. 29, 2010).

[10]Certification of this issue to the DCCA, which is authorized only where "there is no controlling precedent in the decisions" of the DCCA, would thus be improper. D.C. Code § 11-723.

9

687 (1980). Asking whether Congress authorized the District to impose cumulative punishments for certain crimes, *Whalen* held that deference to the DCCA's "construction of local federal legislation is inappropriate . . . for the reason that the petitioner's claim under the Double Jeopardy Clause cannot be separated entirely from a resolution of the question of statutory construction." *Id*. at 688-89.

*Pernell v. Southall Realty*, 416 U.S. 363, 366 (1974), noted that the deference rule only applied "absent a constitutional claim," and rejected the DCCA's interpretation of an eviction statute because it would have implicated the right to jury trial guaranteed by the Seventh Amendment. *Id*. at 374-85.

In sum, deference to the DCCA here would affirm the continued applicability of D.C. Code § 1-303.43. To the extent a Second Amendment issue is raised, deference is not required.

## CONCLUSION

The judgment below should be reversed.

Respectfully Submitted,

/s/ Stephen P. Halbrook
STEPHEN P. HALBROOK
D.C. Bar No. 379799

/s/ Richard E. Gardiner
RICHARD E. GARDINER
D.C. Bar No. 386915

3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

Counsel for Appellants

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect 12 in 14-point Times New Roman.

/s/ Richard E. Gardiner
RICHARD E. GARDINER

# CERTIFICATE OF SERVICE

I certify that on January 21, 2011, electronic copies of this brief were served through the Court's CM/ECF system and two (2) paper copies were mailed by first-class mail, postage prepaid, to:

Todd S. Kim
Solicitor General
Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001

Matthew Shors
O'Melveny & Meyers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001

William J. Olson
370 Maple Avenue West
Suite 4
Vienna, VA 22180-5615

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006

Peter S. Smith
Assistant United States Attorney
555 4th St., N.W., Room 8104
Washington, D.C. 20530

/s/ Richard E. Gardiner
RICHARD E. GARDINER