IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

10-7036

———————

**DICK ANTHONY HELLER, ABSALOM JORDAN,
WILLIAM CARTER, and MARK SNYDER**

Appellants

v.

**THE DISTRICT OF COLUMBIA and
VINCENT C. GRAY, Mayor, District of Columbia**,

Appellees

———————

**REPLY SUPPLEMENTAL BRIEF FOR APPELLANTS
TO AMICI CURIAE BRADY CENTER *ET AL.***

———————

Appeal from the U.S. District Court
for the District of Columbia
District Ct. Civil No. 1:08-cv-01289 (RMU)

Stephen P. Halbrook
Richard E. Gardiner
3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.  The District's Firearm And Magazine Bans
       Are Not "Usual" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   II.  Brady Offers No Admissible Evidence That
       The District's Firearm And Magazine Bans
       Are "Reasonable" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

# TABLE OF AUTHORITIES[*]

**CASES**                                                              **Page**

*Environmental Defense Fund, Inc.* v. *Costle*,
657 F.2d 275 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gleklen v. Democratic Congressional Campaign Committee, Inc.*,
199 F.3d 1365(D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Navegar, Inc. v. United States*,
192 F.3d 1050 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Springfield, Inc. v. Buckles*,
292 F.3d 813 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Staples v. United States*,
511 U.S. 600 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


**UNITED STATES STATUTES**

18 U.S.C. § 921(a)(30) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 921(a)(31) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 922(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 922(w) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 925(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

36 U.S.C. § 40722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

47 Stat. 650 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

_____

[*]Authorities chiefly relied upon are marked with asterisks.

48 Stat. 1236 (1934) ............................................................. 5

## FEDERAL RULES

Fed. R. Evid. 201(b) .......................................................... 3, 8

Fed. R. Evid. 801 .............................................................. 7

Fed. R. Evid. 802 .............................................................. 7

Fed. R. Evid. 803 .............................................................. 7

Fed. R. Evid. 804 .............................................................. 7

## D.C. CODE

D.C. Code § 7-2501.01(3A)(A)(i)(IV) ...................................... 1

D.C. Code § 7-2501.01(3A)(A)(iii) ......................................... 3, 4

## STATE STATUTES

Ca. Penal Code § 11186 ...................................................... 3

Ca. Penal Code § 12020(a)(2) ............................................... 3

Ca. Penal Code § 12020(b)(21)-(32) ....................................... 3

Ca. Penal Code § 12020(c)(25) ............................................. 3

Ca. Penal Code § 12276.1 ................................................... 3

Ca. Penal Code § 12280 ..................................................... 3

Ca. Penal Code § 12285 ..................................................... 3

Conn. Gen. Stat. § 53-202a(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Conn. Gen. Stat. § 53-202d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Conn. Gen. Stat. § 53-202m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Conn. Gen. Stat. § 53-202n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Conn. Gen. Stat. § 53-202o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Haw. Rev. Stat. § 134-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Haw. Rev. Stat. § 134-4(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Haw. Rev. Stat. § 134-8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Md. Code § 4-303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Md. Code § 4-305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

M.G.L. 140 § 121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

M.G.L. 140 § 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

M.G.L. 140 § 131M . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Minn. Stat. § 624.712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Minn. Stat. § 624.713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Minn. Stat. § 624.7131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Minn. Stat. § 624.7132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Minn. Stat. § 624.7141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.J. Rev. Stat. § 2C:39-1w . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.J. Rev. Stat. § 2C:39-3j . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.J. Rev. Stat. § 2C:58-12a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.J. Rev. Stat. § 2C:58-12b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.Y. Consl. Laws § 265.00(22) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.Y. Consl. Laws § 265.00(23) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.Y. Consl. Laws § 265.00(e)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.Y. Consl. Laws § 265.02(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Va. Code § 18.2-287.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Va. Code § 18.2-308.2:01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Va. Code § 18.2-308.2:2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Va. Code § 18.2-308.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Va. Code § 18.2-308.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## CITY ORDINANCES

Aurora, Ill., Code of Ordinances § 29-49(h)(2)(b) . . . . . . . . . . . . . . . . . . . . . . . . 4

Aurora, Ill., Code of Ordinances § 29-49(h)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Aurora, Ill., Code of Ordinances § 29-49(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Buffalo City Code § 180-1(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chicago Municipal Code § 8-20-010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Denver Code of Ordinances § 38-130(b)(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Denver Code of Ordinances § 38-130(b)(1)(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Denver Code of Ordinances § 38-130(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.Y.C. Admin. Code § 10-131(h)(6)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rochester City Code § 47-5(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

Christopher S. Koper, *An Updated Assessment of the
Federal Assault Weapons Ban* (2004),
http://www.ncjrs.gov/pdffiles1/nij/grants/204431.pdf. . . . . . . . . . . . . . . . . . . . . . 10

FBI, *Crime in the U.S.*,
http://www2.fbi.gov/ucr/cius2009/data/table_20.html . . . . . . . . . . . . . . . . . . . . 10

U.S. Census Bureau, *County and City Data Book 2007*,
http://www.census.gov/prod/www/abs/ccdb07.html . . . . . . . . . . . . . . . . . . . . . . 3

# GLOSSARY

| | |
|---|---|
| ATF | Bureau of Alcohol, Tobacco, Firearms & Explosives |
| Brady | The Brady Center |
| Brady Supp. | Amicus Brady Center Supplemental Brief |
| Heller Supp. | Appellants' Supplemental Brief |
| JA | Joint Appendix |
| SGI | Statement of Genuine Issues Necessary to be Litigated |
| UMF | Statement of Undisputed Material Facts |

# SUMMARY OF ARGUMENT

Contrary to the Brady Center ("Brady"), none of the nine states that use the term "assault" in relation to a firearm have laws like the District. All of them define the term more narrowly and either do not regulate possession by law-abiding adults at all, or allow such guns to be registered or licensed. Only two of the six cities referenced have laws like the District's. None of the referenced states and cities bans all magazines holding more than ten rounds. District law is anything but "usual."

Brady has offered no admissible evidence that the District's ban on "assault weapons" and magazines is "reasonable." The "facts" it asserts are not in the record and are inadmissible hearsay. The facts in the record show that such firearms and magazines are widely possessed for lawful purposes.

# ARGUMENT

## I. The District's Firearm And Magazine Bans Are Not "Usual"

The District stands alone in its total ban on ordinary firearms it calls "assault weapons"[1] and magazines holding more than ten rounds. Brady claims that the District's ban is "similar" to the laws of nine of the fifty states. Brady Supp. 2-3. Yet the only states which even use the word "assault" in relation to a firearm – instead of

---

[1] Such term applies mostly to a long list of named rifle models and to any semiautomatic rifle accepting a detachable magazine and only one of a list of generic features, such as a pistol grip. D.C. Code § 7-2501.01(3A)(A)(i)(IV).

1

an aggressive act – define them more narrowly and do not ban them, some regulating them only *de minimus*.  See Heller Supp. 17-19.

Virginia only prohibits carrying certain loaded firearms in public places and restricts possession by aliens and juveniles. Va. Code §§ 18.2-287.4, 18.2-308.2:01, 18.2-308.2:2, 18.2-308.7.  It only bans a single model of shotgun, but no other firearm of any kind. § 18.2-308.8.  Minnesota prohibits possession of certain firearms by juveniles unless under adult supervision.  Minn. Stat. §§ 624.712, 624.713.  It also requires a transfer permit in some cases, which is available to all law-abiding adults. §§ 624.7131, 624.7132, 624.7141.  Neither state regulates magazines.

Hawaii does not ban any rifles or shotguns or magazines for them.  It defines narrowly and restricts transfer, not possession, of "assault pistols" and magazines therefor.  Haw. Rev. Stat. §§ 134-1, 134-4(e), 134-8(c).  Maryland bans "assault pistols" only if unregistered. Md. Code § 4-303. It restricts transfer, but not possession, of a magazine holding more than 20 rounds. § 4-305.  Massachusetts restricts a "large capacity weapon," but "any person" may apply for a license. M.G.L. 140 §§ 121, 131.  It bans possession of magazines holding more than ten rounds only if made after 1994. M.G.L. 140 § 131M.  New Jersey defines "assault firearm" only by name, and allowed registration of any "used for legitimate target-shooting purposes," including "the Colt AR-15" – the very type of rifle at issue here.  N.J. Rev.

Stat. §§ 2C:39-1w, 2C:58-12a & -12b.  Magazines holding more than 15 rounds are restricted unless used with a registered gun.  § 2C:39-1w, 2C:39-3j.

Connecticut and New York define "assault weapon" to require two generic features, and grandfather those possessed before 1994.  Conn. Gen. Stat. §§ 53-202a(a)(3), 53-202d, -m, -n, & -o; N.Y. Consl. Laws § 265.00(22) & (e)(v).  Connecticut does not regulate magazines.  New York bans possession only of post-1994 magazines holding over ten rounds.  N.Y. Consl. Laws § 265.00(23), 265.02(8).

California prohibits "assault weapons,"[2] but exempts registered guns, and also provides for permits to obtain them.  Ca. Penal Code §§ 12280, 12285, 11186.  It restricts sale, but not possession, of magazines holding more than ten rounds.  Ca. Penal Code § 12020(a)(2), (b)(21)-(32), (c)(25).

Except for two, the six cities[3] cited by Brady as having ordinances "similar" to the District have little in common other than use of the term "assault weapon."  Brady

_____

[2]  California is the only state which defines "assault weapon" to include only one rather than two generic features.  Ca. Penal Code § 12276.1.  But it does not include anything so limitless as that of D.C. Code § 7-2501.01(3A)(A)(iii): "Any firearm that the Chief may designate as an assault weapon by rule . . . ."

[3]  These six cities are out of 1,265 incorporated places in the U.S. with a population of 25,000 or more.  U.S. Census Bureau, *County and City Data Book 2007* (Cities, Table C-1, Area & Population), http://www.census.gov/prod/www/abs/ccdb07.html.  *See* Fed. R. Evid. 201(b) (judicial notice).

Supp. 3 n.2.  Denver does not restrict *any* rifle unless it is "with" a magazine holding 21 or more rounds, and even that was allowed to be registered.  Denver Code of Ordinances §§ 38-130(b)(1)(a), 38-130(f).  The AR-15 rifle is also lawful in two cities which do not name it or restrict rifles with pistol grips.  Buffalo City Code § 180-1(B); Rochester City Code § 47-5(B).  Aurora requires two features to meet the generic definition, and allowed them to be registered.  Aurora, Ill., Code of Ordinances §§ 29-49(h)(2)(b), 29-49(g).  Only Chicago and New York City are similar to the District, though even they have no equivalent "[a]ny firearm that the Chief may designate" clause.  D.C. Code § 7-2501.01(3A)(A)(iii).

*None* of these jurisdictions limit magazines to ten rounds.  Denver Code of Ordinances § 38-130(b)(1)(a),  (e) (20 rounds permitted); Aurora, Ill., Code of Ordinances § 29-49(h)(4) (15 rounds); Buffalo City Code § 180-1(B) (17 rounds for handguns); N.Y.C. Admin. Code § 10-131(h)(6)(a) (same); Rochester City Code § 47-5(B) (same); Chicago Municipal Code § 8-20-010 (12 rounds).

Nor is District law comparable to the expired federal law, which narrowly defined only a short list of semiautomatic firearms as "assault weapons" and required two features under its generic definition.  18 U.S.C. § 921(a)(30) (1994-2004).  The federal law only prohibited new manufacture of such firearms and magazines holding over ten rounds, and did not restrict those that were possessed as of the 1994

4

enactment date.  *Id.* § 922(v) (firearms); §§ 921(a)(31), 922(w) (magazines).[4]

Congress evidently does not agree that the firearms at issue are produced for "mayhem."  Brady Supp. 6.  Rifles such as the AR-15 type are used in the Civilian Marksmanship Program (JA 46), which instructs citizens in marksmanship, promotes practice and safety, and conducts firearm competitions.  36 U.S.C. § 40722.[5]

Finally, Brady suggests that the District's law is "usual" because some (but not all) of the banned firearms may not be considered by ATF as "particularly suitable for sporting purposes" for importation under 18 U.S.C. § 925(d)(3).[6]  Brady Supp. 5.

---

[4]  Brady's suggestion that this "ban" was "particularly effective" because the number of traces of such firearms decreased may show that trace data can be manipulated, but says nothing about criminal misuse, as the number of such firearms stayed constant.  Brady Supp. 6.

[5]  Brady mischaracterizes a 1932 Act of Congress for the District as including "later models of assault weapons," which it did not.  Brady Supp. 4.  The obsolete provision defined "machine gun" as "any firearm which shoots automatically or semiautomatically more than twelve shots without reloading."  47 Stat. 650, 654 (1932).  This anomalously excluded a true machine gun with a magazine holding only twelve shots and included a mere semiautomatic with a magazine holding more than twelve.  Congress corrected the anomaly two years later in the National Firearms Act by defining "machine gun" to include only true ones – guns that shoot "more than one shot . . . by a single function of the trigger."  48 Stat. 1236 (1934).

[6]  *Springfield, Inc. v. Buckles*, 292 F.3d 813, 817-18 (D.C. Cir. 2002), deferred to the agency's interpretation of the sporting-purposes test.  ATF considered the rifles in question importable during 1968-1997, *id.* at 816, and contrary to Brady, they were not "assault weapons" under the then-existing 1994 federal law.

Such firearms may, however, be freely manufactured and possessed in the U.S. A protectionist law which encourages *American production* of such firearms is not "similar" to the District's total ban on them.

## II. Brady Offers No Admissible Evidence That The District's Firearm And Magazine Bans Are "Reasonable"

Brady asserts that the "ban applies only to a narrow set of weapons that have no legitimate self-defense function but nonetheless present a severe danger to the public." Brady Supp. 6-7. Whether that is true or not, the only issue before this court is whether the prohibition on AR-15 type rifles and Armalite AR-180 rifles is "reasonable." Thus, even if the "data" proffered by Brady could be considered by the court –- which it cannot, as discussed below –- those data are immaterial since they do not address AR-15 type rifles and Armalite AR-180 rifles.

Brady claims that "assault weapons" have "a 'distinctively military configuration' and 'are designed for killing and disabling the enemy,' which has 'distinguished the[se] rifles form traditional sporting rifles.'" Brady Supp. 7. Since none of these purported "facts" is in the record, they may not be considered by this court. *See Environmental Defense Fund, Inc.* v. *Costle*, 657 F.2d 275, 284 n.32 (D.C. Cir. 1981) ("The record on appeal should consist of the record before the district court, and should not include information made available subsequent to the date of the decision below"). What is in the record shows that rifles of this type are commonly

possessed for protection, target shooting, competitions, and sporting purposes. JA 47 (UMF 18). In particular, the ArmaLite AR-180 rifle and AR-15 variants are commonly possessed for sport and security, including personal protection in the home. JA 48 (UMF 26).[7] The accuracy and light recoil of these rifles make them useful for hunting small and medium-sized game. JA 49 (UMF 28). For personal protection by police and private owners, a rifle provides better accuracy than a handgun, and the small caliber round of these rifles tends to break up rather than penetrate walls. UMF 29. Further, semiautomatic rifles, including the AR-15 type rifles and Armalite AR-180 rifles, are not designed for offensive military use, are not used as service rifles by any military force in the world, do not allow rapid and spray firing, and are not preferred by irregular forces or terrorists. JA 129 (SGI 5).

The purported "facts" are also inadmissible hearsay under Fed. R. Evid. 801 and 802, and do not fit within in any of the hearsay exceptions under Rule 803 or 804. Inadmissible hearsay cannot be used to raise a fact issue for purposes of summary judgment. *Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (deposition evidence that was hearsay "counts for nothing" on summary judgment).

---

[7] AR-15 rifles "have been widely accepted as lawful possessions . . . ." *Staples v. United States*, 511 U.S. 600, 612 (1994)

Judicial notice may not be taken of the alleged "facts" because they are subject to reasonable dispute, are not generally known within the territorial jurisdiction of the trial court, and are not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Brady claims that this court "has upheld regulation of semi-automatic assault weapons as a 'reasonable' regulation," citing *Springfield, Inc.* v. *Buckles*, 292 F.3d 813, 818 (D.C. Cir. 1999). This is simply inaccurate. At the cited page of *Springfield, Inc.*, the only use of the word "reasonable" is in a discussion of the "requirement of judicial deference to reasonable agency interpretations of statutes . . . ." *Id.* Similarly, *Navegar, Inc. v. United States*, 192 F.3d 1050 (D.C. Cir. 1999), also did not address whether a ban on new "assault weapons" was reasonable; it addressed whether Congress had the power under the Commerce Clause to prohibit the manufacture, transfer, and possession of such firearms.

Brady makes factual assertions about the alleged rate of fire of semiautomatic handguns with high-capacity magazines, and claims that, "[a]ccording to law enforcement, 'There's absolutely no doubt the magazines increased the lethality and the body count of [the Tucson] attack.'" Brady Supp. 8. These "facts" are not in the record and are inadmissible hearsay of which the court may not take judicial notice.

The evidence which is in the record shows that millions of magazines holding

more than 10 rounds are available in the commercial market and are in common use for self protection, target shooting, competitions, and other sporting purposes. JA 50 (UMF 34). As of 1994, an estimated 25 million firearms, amounting to 18 percent of civilian-owned firearms, had magazines holding over ten rounds. *Id.* (UMF 39). That same year, an estimated 40 percent of the semiautomatic handgun models and a majority of the semiautomatic rifle models manufactured were sold with, or had a variation that was sold with, a magazine holding over 10 rounds. *Id.* (UMF 40). Further, the usefulness of magazines holding more than 10 rounds for lawful defense of self and others is demonstrated by the fact that they are issued to the police. JA 51-52. In 1989, the MPD adopted the Glock 17 as its service pistol, magazines for which hold 17 rounds, and later adopted the Glock 19, magazines for which hold 15 rounds. JA 52 (UMF 41).

Since it issues them to the MPD, the District would likely disagree with Brady's assertion that "high-capacity ammunition magazines are designed to shoot mass numbers of people quickly and efficiently." Brady Supp. 8. As applied here, the issue is whether it is reasonable to prohibit plaintiffs from possession of pistol magazines holding 14 or 15 rounds (JA 49, 52), or magazines holding 20 or 30 rounds for AR-15 type rifles (JA 50), which are used in the Civilian Marksmanship Program. (JA 46.)

Brady's argument about the percentage of "assault weapons" illustrates how

slippery that term can be, not to mention the unreliability of sources relied on. Brady Supp. 9. One estimate gives as its source "Cox Newspapers, 1989,"[8] which is not even a complete citation. Brady assumes that the percentage of "assault weapons" is the same as narrowly defined in the expired federal law and broadly defined in the District law. As for "assault weapons" being "disproportionately used by criminals," Brady Supp. 10, a reality check would ask why the District, which is surrounded by states in which rifles such as the AR-15 are perfectly legal, in 2009 had just one murder with a rifle (of unknown type) out of 113 murders with firearms.[9]

Because Brady has not offered any evidence that the court may consider, there is no merit to its argument that the prohibition on "assault weapons" and magazines holding more than 10 rounds is reasonable.

## CONCLUSION

The judgment below should be reversed.

---

[8] Cited in Christopher S. Koper, *An Updated Assessment of the Federal Assault Weapons Ban* 10 (2004), http://www.ncjrs.gov/pdffiles1/nij/grants/204431.pdf.

[9] FBI, *Crime in the U.S.*, http://www2.fbi.gov/ucr/cius2009/table_20.html.

Respectfully Submitted,

/s/ Stephen P. Halbrook
STEPHEN P. HALBROOK
D.C. Bar No. 379799

/s/ Richard E. Gardiner
RICHARD E. GARDINER
D.C. Bar No. 386915

3925 Chain Bridge Road, Suite 403
Fairfax, VA  22030
(703) 352-7276

Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect 12 in 14-point Times New Roman.

　　　　　　　　　　　　　　　/s/ Richard E. Gardiner
　　　　　　　　　　　　　　　RICHARD E. GARDINER

## CERTIFICATE OF SERVICE

I certify that on January 28, 2011, electronic copies of this brief were served through the Court's CM/ECF system and two (2) paper copies were mailed by first-class mail, postage prepaid, to:

Todd S. Kim
Solicitor General
Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001

Matthew Shors
O'Melveny & Meyers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001

William J. Olson
370 Maple Avenue West
Suite 4
Vienna, VA 22180-5615

Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006

Peter S. Smith
Assistant United States Attorney
555 4th St., N.W., Room 8104
Washington, D.C. 20530

/s/ Richard E. Gardiner
RICHARD E. GARDINER